**2012-1250, -1347**

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

---

**PAT HUVAL RESTAURANT & OYSTER BAR, INC., AQUA FARMS CRAWFISH, INC., CATFISH WHOLESALE, INC., CHARLES BERNARD (doing business as Charles' Crawfish Pad), ANDRE LEGER (doing business as Chez Francois), JIM FRUGE (doing business as Fisherman's Cove), J. BERNARD SEAFOOD PROCESSING, INC., and FRENCH'S ENTERPRISES SEAFOOD PEELING PLANT,**

Plaintiffs,

and

**JTEKT NORTH AMERICA CORPORATION (formerly known as Koyo Corporation of U.S.A.) and SKF USA, INC.,**

Plaintiffs-Appellants,

v.

**UNITED STATES INTERNATIONAL TRADE COMMISSION,**

Defendant-Appellee,

and

**UNITED STATES CUSTOMS AND BORDER PROTECTION,**

Defendant-Appellee,

and

**THE TIMKEN COMPANY and MPB CORPORATION,**

Defendants-Appellees.

---

**Appeal from the United States Court of International Trade in Consol. Case No. 06-00290, Judge Gregory W. Carman.**

---

**BRIEF OF PLAINTIFFS-APPELLANTS SKF USA INC. AND JTEKT NORTH AMERICA CORPORATION**

John M. Gurley
Nancy A. Noonan
Diana Dimitriuc-Quaia
ARENT FOX LLP
1717 K Street, N.W.
Washington, DC 20036
(202) 857-6000
john.gurley@arentfox.com
*Counsel for JTEKT North America Corp.*

Herbert C. Shelley
STEPTOE & JOHNSON LP
1330 Connecticut Ave., NW
Washington, DC 20036
Tel.: (202) 429-8146
Hshelley@steptoe.com
*Counsel for SKF USA Inc.*

July 21, 2014

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

Pat Huval Restaurant & Oyster Bar, Inc. v. U.S. International Trade Commission
No. 2012-1250

## CERTIFICATE OF INTEREST

Counsel for Plaintiff-Appellant, SKF USA Inc., certifies the following:

1.  The full name of every party or amicus represented by me is:

    SKF USA Inc.

2.  The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

    None

3.  All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

    AB SKF (a publicly-owned Swedish corporation) owns more than 10% of SKF USA Inc. and is the ultimate parent company of SKF USA Inc.

4.  The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:

    Herbert C. Shelley, Alice A. Kipel, Michael. T. Gershberg, Laura R. Ardito, Susan R. Gihring and William G. Isasi of the law firm of Steptoe & Johnson LLP, represented the Plaintiff-Appellant at the Court of International Trade. Herbert C. Shelley will appear in this proceeding. In addition, Christopher G. Falcone, also of Steptoe & Johnson, will appear in this proceeding.  Mr. Falcone did not represent the Plaintiff-Appellant in the trial court.

_____7/17/2014_____                     __/s/ Herbert C. Shelley__
           Date                          Herbert C. Shelley
                                         STEPTOE & JOHNSON LLP
                                         1330 Connecticut Avenue, N.W.
                                         Washington, D.C. 20036
                                         Telephone: 202-429-8146
                                         Fax: 202-429-3902
                                         Email: hshelley@steptoe.com

Form 9

FORM 9. Certificate of Interest

## UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

Pat Huval Restaurant & Oyster Bar, Inc. v. U.S. International Trade Commission

No. 2012-1250

## CERTIFICATE OF INTEREST

Counsel for the (petitioner) (appellant) (respondent) (appellee) (amicus) (name of party)
JTEKT North America Corporation certifies the following (use "None" if applicable; use extra sheets if necessary):

1.　　The full name of every party or amicus represented by me is:

JTEKT North America Corporation (formerly Koyo Corporation of U.S.A.)

2.　　The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

JTEKT North America Corporation

3.　　All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

JTEKT North America Corporation (formerly Koyo Corporation of U.S.A.) is a wholly owned subsidiary of JTEKT Corporation, a publicly traded company in Japan. Toyota Motor Corporation is a publicly held company that owns more than 10% of JTEKT Corporation.

4.　☑　The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:

Arent Fox LLP, John M. Gurley, Nancy A. Noonan, Diana Dimitriuc Quaia

July 21 2014
　　　　Date

_____
Signature of counsel

Nancy A. Noonan
Printed name of counsel

Please Note: All questions must be answered
cc: _____

124

# TABLE OF CONTENTS

STATEMENT OF RELATED CASES ...................................................1

JURISDICTIONAL STATEMENT .......................................................1

STATEMENT OF THE ISSUES...........................................................2

STATEMENT OF THE CASE...............................................................2

STATEMENT OF FACTS ....................................................................3

SUMMARY OF ARGUMENT ...........................................................10

ARGUMENT .....................................................................................10

I.     STANDARD OF REVIEW ......................................................10

II.    THE CDSOA IS UNCONSTITUTIONAL AS APPLIED TO SKF USA
     AND JTEKT ...........................................................................11

     A.    The CDSOA, and Defendants' Application Thereof to SKF USA and
          JTEKT, Have Impermissibly Retroactive Effects.............................11

     B.    The Retroactive Effects of the CDSOA Are Not Supported by a
          Legitimate Legislative Purpose .................................................18

III.    SKF USA'S COMPLAINT FOR FISCAL YEAR 2004 DISTRIBUTIONS
     WAS TIMELY FILED ............................................................22

IV.    JTEKT'S COMPLAINTS FOR FISCAL YEAR 2004 AND FISCAL YEAR
     2006 DISTRIBUTIONS WERE TIMELY FILED .......................................26

CONCLUSION ..................................................................................27

# TABLE OF AUTHORITIES

**Page(s)**

C**ASES**

Brown Park Estates-Fairfield Dev. Co. v. United States,
  127 F.3d 1449 (Fed. Cir. 1997) ...................................................................24

Canadian Lumber Trade Alliance,
  425 F. Supp. 2d 1321 (Ct. Int'l Trade 2006) ......................................... 15-16

Canadian Lumber Trade Alliance,
  517 F.3d 1319 (Fed. Cir. 2008) ...................................................................16

Eastern Enters. v. Apfel,
  524 U.S. 498, 548 (1998) .............................................................................19

Landgraf v. USI Film Prods.,
  511 U.S. 244 (1994) ............................................................................. passim

Lawrence v. Anheuser-Busch,
  523 A.2d 864 (R.I. 1987) .............................................................................14

Martin v. Hadix,
  527 U.S. 343 (1999) .....................................................................................18

Mojica v. Reno,
  970 F. Supp. 130 (E.D.N.Y. 1997), aff'd on other grounds, 157 F.3d 106
  (2d Cir. 1998) ..............................................................................................18

Monoson v. United States,
  516 F.3d 163 (3d Cir. 2008) .........................................................................18

Palmer v. Bd. of Ed.,
  46 F.3d 682 (7th Cir. 1995) ..........................................................................24

Pat Huval Restaurant & Oyster Bar, Inc. v. United States,
  823 F. Supp. 2d 1365 (Ct. Int'l Trade 2012) ........................................ passim

Pat Huval Restaurant & Oyster Bar, Inc. v. United States,
  547 F. Supp. 2d 1352 (Ct. Int'l Trade 2008) ........................................ passim

Pension Benefit Guaranty Corp. v. R.A. Gray & Co.,
   467 U.S. 717 (1984) .................................................................................... 18-19

Princess Cruises, Inc. v. United States,
   397 F.3d 1358 (Fed. Cir. 2005) ....................................................................16

Republic of Austria v. Altmann,
   541 U.S. 677 (2004) ................................................................................13, 14

SKF USA Inc. v. U.S. Customs & Border Prot.,
   556 F.3d 1337 (Fed. Cir. 2009) ............................................................. passim

Usery v. Turner Elkhorn Mining Co.,
   428 U.S. 1 (1976)....................................................................................12, 19

W. Lynn Creamery, Inc. v. Healy,
   512 U.S. 186 & 196....................................................................................15, 16

**AGENCY PROCEEDINGS**

Antifriction Bearings (Other than Tapered Roller Bearings) and Parts
   Thereof from France: Initiation of Antidumping Duty Investigation, 53
   Fed. Reg. 15,074 (Dep't of Commerce Apr. 27, 1988)...............................3

Antifriction Bearings (Other Than Tapered Roller Bearings) and Parts
   Thereof from the Federal Republic of Germany, France, Italy, Japan,
   Romania, Singapore, Sweden, Thailand, and the United Kingdom,
   USITC Pub. 2185, Inv. Nos. 303-TA-19 and 20, 731-TA-391-399 (Final)
   (May 1989) .................................................................................... 4-5

Certain Bearings from China, France, Germany, Hungary, Italy, Japan,
   Romania, Singapore, Sweden, and the United Kingdom, USITC Pub.
   3309 (June 2000) (Review) ...........................................................5

Tapered Roller Bearings and Parts Thereof, and Certain Housings
   Incorporating Tapered Rollers From Hungary, The People's Republic of
   China, and Romania, USITC Pub. 1983 (June 1987) .................................5

**CONSTITUTIONS**

U.S. Const. amend. V.................................................................... passim

U.S. Const. art. I, § 9, cl. 3 ...........................................................12

U.S. Const. art. I, § 10, cl. 1 .........................................................................................12

STATUTES

19 U.S.C. § 1675(c) ........................................................................................... passim

19 U.S.C. § 1675c(a) ..........................................................................................6

19 U.S.C. § 1675c(b)(1) .................................................................................7, 21

19 U.S.C. § 1675c(b)(4) .......................................................................................7

19 U.S.C. § 1675c(d)(1) .......................................................................................7

19 U.S.C. § 1675c(d)(2) .......................................................................................7

19 U.S.C. § 1675c(d)(3) .......................................................................................6

28 U.S.C. § 1295(a)(5) .........................................................................................1

28 U.S.C. § 1582(2) .............................................................................................1

28 U.S.C. § 2107(b) .............................................................................................2

Continued Dumping and Subsidy Offset Act of 2000, Pub. L. No. 105-387,
    § 1003(a), 114 Stat. 1549A-73 (2000)....................................................... passim

Pub. L. 109-171, Title VII, § 706(a), Feb. 8, 2006, 120 Stat. 154...............................7

REGULATIONS

19 C.F.R. § 159.61(b) ..........................................................................................21

RULES

Fed. Cir. R. 47.5 ...................................................................................................1

Fed. R. App. P. 4(a)(1)(B) ....................................................................................2

USCIT R. 12(b)(1) ...........................................................................................3, 9

USCIT R. 12(b)(5) ...........................................................................................3, 8

**OTHER AUTHORITIES**

16B Am. Jur. 2d <u>Constitutional Law</u> § 692 (1998).  ........................................................19

## STATEMENT OF RELATED CASES

In accordance with Rule 47.5 of the Rules of the U.S. Court of Appeals for the Federal Circuit, counsel for Plaintiffs-Appellants SKF USA Inc. and JTEKT North America Corporation (formerly Koyo Corporation of U.S.A.) state:

1.     Counsel are not aware of any other appeal in or from the same civil action or proceeding in the lower court or body that was previously before this Court or any other appellate court.

2.     Counsel are aware of two cases currently pending before this Court, and two cases currently pending before the U.S. Court of International Trade ("CIT"), that may directly affect or be directly affected by this Court's decision here.  These cases also challenge the retroactive application of the CDSOA.  See Schaeffler Group USA, Inc. v. United States, Fed. Cir. No. 12-1269; JTEKT North America Corporation v. United States, Fed. Cir. No. 13-1399 (stayed pending this appeal); Barden Corp. v. United States, CIT Consol. No. 06-00435; and JTEKT North America Corporation v. United States, CIT Ct. No. 14-127 (a motion for stay pending this appeal has been filed before the CIT).

## JURISDICTIONAL STATEMENT

The CIT had exclusive subject matter jurisdiction over this action under 28 U.S.C. § 1581(i).  This Court has exclusive jurisdiction over this appeal under 28 U.S.C. § 1295(a)(5).  These consolidated appeals were timely filed on March 5 and

April 20, 2012, *i.e.*, within 60 days of the CIT's final opinion and judgment of March 1, 2012. 28 U.S.C. § 2107(b); Fed. R. App. P. 4(a)(1)(B).

## STATEMENT OF THE ISSUES

1.      Whether the government's application of the Continued Dumping and Subsidy Offset Act of 2000's ("CDSOA") petition support requirement to SKF USA and JTEKT, making cash distributions contingent on speech and conduct that occurred decades earlier, is impermissibly retroactive in violation of the Due Process Clause of the Constitution.

2.      Whether certain SKF USA and JTEKT claims were timely filed at the CIT, based on the statute of limitations beginning to run when CDSOA distributions were made to their competitors.

## STATEMENT OF THE CASE

Between 2006 and 2010, SKF USA and JTEKT filed complaints at the CIT challenging the CDSOA's petition support requirement, and the government's application thereof to SKF USA and JTEKT, under the First Amendment, Equal Protection and Due Process Clauses of the Constitution. The government moved to dismiss the complaints and for judgment on the pleadings. In <u>Pat Huval Restaurant & Oyster Bar, Inc. v. United States</u>, 823 F. Supp. 2d 1365 (Ct. Int'l Trade 2012) ("<u>Pat Huval II</u>") (JA0001-0014), the CIT dismissed the complaints

under USCIT Rule 12(b)(5) for failure to state a claim upon which relief can be granted, and under USCIT Rule 12(b)(1) on timeliness and mootness grounds.

SKF USA and JTEKT timely appealed the CIT's judgment. They currently maintain this appeal as to Due Process claims regarding the retroactive application of the CDSOA, and if successful as to the Due Process claims, they challenge the CIT's statute of limitations decision for each Plaintiff-Appellant.

## STATEMENT OF FACTS

SKF USA and JTEKT are U.S. manufacturers of anti-friction bearings ("AFBs"), including ball bearings ("BBs") and tapered roller bearings ("TRBs").

### Antidumping Investigations

In 1988, pursuant to a petition brought by The Torrington Company (subsequently acquired by The Timken Company), the U.S. Department of Commerce ("Commerce") initiated antidumping investigations of AFBs. See, e.g., Antifriction Bearings (Other than Tapered Roller Bearings) and Parts Thereof from France: Initiation of Antidumping Duty Investigation, 53 Fed. Reg. 15,074 (Dep't of Commerce Apr. 27, 1988).

In order to fulfill its statutory obligation to determine whether the domestic industry had been injured by the alleged dumping of AFBs, the U.S. International Trade Commission ("ITC") sent domestic producer questionnaires to U.S. AFB manufacturers, including SKF USA. The questionnaires elicited data on the

domestic industry so that the ITC could make its determination of whether the

domestic industry had been injured.  The questionnaires also specifically requested

each domestic producer to express its view as to whether it supported the petition,

opposed the petition or took no position as to the petition.  SKF USA stated that it

opposed the petition.

Based on the data submitted by all parties, including SKF USA, the ITC

determined that the domestic industry was materially injured by reason of imports

of AFBs.  As a result of the ITC's final material injury determinations and

Commerce's final sales at less-than-fair-value determinations, Commerce issued

antidumping orders against AFBs from the subject countries.

As part of its investigation, the ITC determined that the "condition of the

industry as a whole, not the condition of individual producers" was the proper

point of inquiry into whether the domestic industry had been materially injured.

See Antifriction Bearings (Other Than Tapered Roller Bearings) and Parts Thereof

from the Federal Republic of Germany, France, Italy, Japan, Romania, Singapore,

Sweden, Thailand, and the United Kingdom, USITC Pub. 2185, at 44, Inv. Nos.

303-TA-19 and 20, 731-TA-391-399 (Final) (May 1989) ("AFBs").

The ITC specifically included SKF USA as part of the domestic industry in

making its injury determinations.  See id. at 42.  The CIT and this Court affirmed

the ITC's determination to include SKF USA as part of the domestic industry for

AFBs.  See Torrington Co. v. United States, 790 F. Supp. 1161, 1168 (Ct. Int'l

Trade 1992), aff'd mem., 991 F.2d 809 (Fed. Cir. 1993) (Table).  Indeed, the ITC

rejected the argument that "all foreign-owned producers should be excluded from

the domestic industry" and stated that it had "not excluded any related parties from

any of the domestic industries."  AFBs at 41, 44.  JTEKT was an interested party

and participating in the proceeding.  The ITC's position meant that JTEKT (then

known as Koyo Corporation of U.S.A.) was also included in the domestic industry.

Similarly, JTEKT was an interested party and participated in the proceedings

regarding the underlying antidumping duty investigations of tapered roller

bearings, and the ITC included JTEKT in the domestic industry in those

investigations.[1]  See e.g., Tapered Roller Bearings and Parts Thereof, and Certain

Housings Incorporating Tapered Rollers From Hungary, The People's Republic of

China, and Romania, USITC Pub. 1983 at 9 (June 1987); Certain Bearings from

China, France, Germany, Hungary, Italy, Japan, Romania, Singapore, Sweden, and

the United Kingdom, USITC Pub. 3309, Vol. 1 at 15 (June 2000) (Review) ("In

the original investigations, the Commission did not exclude any related parties

[from the domestic industry]….").

---

[1] A complete list of the thirteen antidumping duty orders at issue for JTEKT (i.e., ball bearings and tapered roller bearings from various countries) was provided in the underlying complaint filed by JTEKT at the CIT, and is incorporated here by reference in this appeal.

## The CDSOA

A midnight provision inserted into an appropriations bill without debate, the CDSOA radically altered the manner in which the United States handles antidumping and countervailing duties once collected. Prior to October 2000, all the duties collected by U.S. Customs and Border Protection ("Customs") from importers were deposited into the United States' general treasury. In October 2000, however, a House/Senate reconciliation committee added the CDSOA to an annual agricultural appropriations bill, amending title VII of the Tariff Act of 1930 (the antidumping and countervailing duty laws) by adding a new Section 754 (codified at 19 U.S.C. § 1675(c)). See Pub. L. No. 106-387, § 1003(a), 114 Stat. 1549A-73 (2000). Effective October 1, 2001, the CDSOA directed that duties assessed pursuant to antidumping and countervailing duty orders be distributed to "affected domestic producers" ("ADPs"). 19 U.S.C. § 1675c(a).

The amendment tasked Customs with the responsibility for distributing the assessments and establishing in the U.S. Treasury a Special Account with respect to each antidumping order that was in effect on or took effect after January 1, 1999. All duties assessed under an order, including pre-2000 orders, must be deposited into the relevant Special Account, rather than going into the general revenue. Each fiscal year, Customs must disburse funds from these accounts to ADPs on a pro rata basis based on qualifying expenditures. See 19 U.S.C.

§ 1675c(d)(3), (e)(1)-(2). Although enacted long after the issuance of the AFB antidumping orders, the CDSOA acts retrospectively such that duties collected pursuant to pre-2000 antidumping orders are available for disbursement to ADPs each fiscal year.

The ITC compiles the list of ADPs and forwards that list to Customs. Each fiscal year, Customs publishes this list in the <u>Federal Register</u>, along with notice of intent to distribute assessed duties. <u>See</u> 19 U.S.C. § 1675c(d)(2). To qualify for CDSOA disbursements, a company must certify that it is eligible as an ADP (19 U.S.C. § 1675c(b)(1)) and that it incurred "[q]ualifying expenditure[s]" (19 U.S.C. § 1675c(b)(4)). Most relevant here, the statute requires the ITC to limit its list of ADPs to petitioners and those otherwise qualified domestic producers that "indicate support of the petition by letter or through questionnaire response." 19 U.S.C. § 1675c(d)(1).

The CDSOA was repealed by Congress in 2006. Pub. L. 109-171, Title VII, § 7601(a), Feb. 8, 2006, 120 Stat. 154. While the repeal was effective on October 1, 2007, funds will continue to be distributed as long as they are available.

To date, hundreds of millions of dollars have been distributed to U.S. producers of AFBs under the CDSOA. The government has never accepted SKF and JTEKT as ADPs eligible for CDSOA disbursements because they both

opposed the underlying petitions filed as many as twenty years before the CDSOA was enacted.

**Judicial Proceedings**

Between 2006 and 2010, SKF USA and JTEKT filed complaints at the CIT challenging the CDSOA's petition support requirement, and the government's application thereof to SKF USA and JTEKT, under the First Amendment, Equal Protection and Due Process clauses of the Constitution. SKF USA's and JTEKT's cases were consolidated with the Pat Huval case, which raised some of the same challenges to the CDSOA. In Pat Huval Restaurant & Oyster Bar, Inc. v. United States, 547 F. Supp. 2d 1352 (Ct. Int'l Trade 2008) ("Pat Huval I") (JA0015-0026), the CIT dismissed certain facial constitutional challenges on statute of limitations grounds.

The CIT proceedings were then stayed pending resolution of related cases before this Court – SKF USA Inc. v. U.S. Customs & Border Prot., Nos. 2008-1005, -1006, -1007, and -1008, and P.S. Chez Sidney, LLC v. United States Int'l Trade Comm'n, Nos. 2008-1526, -1527, 1534, and -1555. Subsequent to the removal of the stay, the government moved to dismiss the complaints and for judgment on the pleadings. In Pat Huval II, the CIT dismissed the complaints under USCIT Rule 12(b)(5) for failure to state a claim upon which relief can be granted, and dismissed SKF USA's claims challenging fiscal year 2004

distributions (CIT Court No. 06-00328) and JTEKT's claims challenging fiscal

year 2006 distributions (CIT Court No. 08-00340) under USCIT Rule 12(b)(1) on

timeliness grounds.  The CIT also dismissed SKF USA's claim under the

Administrative Procedure Act – a claim which SKF USA does not pursue before

this Court – under USCIT Rule 12(b)(1) as moot.

SKF USA and JTEKT appealed the CIT's judgment as to their Due Process

and First Amendment Claims.  On May 9, 2012, this Court stayed this appeal

pending the resolution of two appeals that raised similar issues regarding the

CDSOA's petition support requirement -- Ashley Furniture Industries, Inc. v. U.S.,

No. 2012-1196 and Ethan Allen Global, Inc. v. U.S., No. 2012-1200.  After the

stay was lifted, SKF USA and JTEKT notified this Court that they intended to

continue this appeal only with respect to their claim that the CDSOA is an

impermissibly retroactive statute in violation of the Due Process Clause of the

Constitution, and if successful as to the Due Process claims, to challenge the CIT's

statute of limitations decision for each Plaintiff-Appellant.  The Appellees MPB

Corporation and The Timken Company moved for summary affirmance of the

CIT's judgment, which this Court denied on June 19, 2014.  This Court ordered

SKF USA and JTEKT to file initial briefs.

## SUMMARY OF ARGUMENT

The CDSOA is an impermissibly retroactive statute, in violation of the Due Process Clause of the Constitution.  By making distributions contingent on speech and conduct that occurred decades earlier, the CDSOA imposed a new disability on SKF USA and JTEKT by providing subsidies to their direct competitors, resulting in competitive harm.  There is no rational basis for the retroactive application of the CDSOA's petition support requirement.   Making eligibility for current disbursements based on actions that occurred two decades earlier, and which could not have been anticipated as deleterious, is not rationally related to any legitimate government purpose.  Accordingly, this Court should find the application of the CDSOA's petition support requirement impermissibly retroactive as to SKF USA and JTEKT, invalidate and sever the CDSOA's petition support requirement, and enter judgment ordering the government to certify SKF USA and JTEKT as eligible recipients of CDSOA distributions.

In addition, the CIT's statute of limitations decisions should be reversed. SKF USA and JTEKT timely filed all relevant claims based on those claims properly accruing when CDSOA disbursements were made to their competitors.

## ARGUMENT

## I.    STANDARD OF REVIEW

This Court reviews <u>de novo</u> the CIT's dismissal of a complaint for failure to state a claim.  <u>Greenlee County, Ariz. v. United States</u>, 487 F.3d 871, 877

(Fed. Cir. 2007). Under USCIT Rule 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." A complaint meets that standard if it contains "sufficient factual matter, accepted as true, to 'state a claim of relief that is plausible on its face.'" <u>Sioux Honey Ass'n v. Hartford Fire Ins. Co.</u>, 672 F.3d 1041, 1062 (Fed. Cir. 2012) (quoting <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009)). When reviewing the complaint for sufficiency, the Court must "indulge all reasonable inferences" in favor of the plaintiff. <u>Chapman Law Firm Co. v. Greenleaf Constr. Co.</u>, 490 F.3d 934, 938 (Fed. Cir. 2007) (citation omitted).

In addition, a "dismissal for lack of jurisdiction by the court below is also a legal conclusion reviewed de novo." <u>Banks v. United States</u>, 741 F.3d 1268, 1275 (Fed. Cir. 2014). "This court reviews the Court of Federal Claims' dismissal of a complaint for lack of jurisdiction and grant of summary judgment without deference." <u>Mildenberger v. United States</u>, 643 F.3d 938, 944 (Fed. Cir. 2011) (affirming dismissal of claims as untimely); <u>see also</u> <u>Pat Huval II</u>, 823 F. Supp. 2d at 1374 (concluding that the statute of limitations is jurisdictional) (JA0009).

## II. THE CDSOA IS UNCONSTITUTIONAL AS APPLIED TO SKF USA AND JTEKT

### A. The CDSOA, and Defendants' Application Thereof to SKF USA and JTEKT, Have Impermissibly Retroactive Effects

Under established Supreme Court precedent, the Due Process Clause limits the government's ability to apply legislation retroactively.  The CDSOA as applied to SKF USA and JTEKT violates this precedent because their eligibility for CDSOA disbursements is irrationally based on conduct (i.e., a failure to express support for the AFB petition) occurring prior to enactment of the CDSOA.  As such, the CDSOA as applied to SKF USA and JTEKT is a violation of the Due Process Clause of the Fifth Amendment to the Constitution.

The Constitution recognizes a strong distrust of laws with retroactive effect. For instance, it contains prohibitions against ex post facto laws which limit the government's ability to impose criminal laws and penalties retroactively.  U.S. Const. art. I, § 9, cl. 3; U.S. Const. art. I, § 10, cl. 1.  The Constitution also limits the government's ability to impair the contract rights of individuals retroactively. Id. art. I, § 10, cl. 1.  Moreover, the Supreme Court has recognized a prohibition against retroactive lawmaking inherent in the Due Process Clause of the Fifth Amendment.  See Landgraf v. USI Film Prods., 511 U.S. 244, 266 (1994) ("The Due Process Clause also protects the interests in fair notice and repose that may be compromised by retroactive legislation; a justification sufficient to validate a statute's prospective application under the Clause 'may not suffice' to warrant its retroactive application."), citing Usery v. Turner Elkhorn Mining Co., 428 U.S. 1, 17 (1976).

In order to determine whether the law is retroactive, this Court must ask whether the CDSOA "attaches new legal consequences to events completed before its enactment." Landgraf, 511 U.S. at 270. Before enactment of the CDSOA, failing to support an antidumping petition did not determine whether a domestic producer was eligible for CDSOA disbursements. That is, before enactment of the CDSOA, the antidumping law did not burden domestic producers' speech. Thus, where speech occurring before CDSOA enactment is used as an eligibility criterion, new legal consequences are attached to events completed before the CDSOA's enactment. Hence, the CDSOA constitutes a retroactive law.

Additionally, SKF USA and JTEKT could not have anticipated during the AFBs investigation in 1988 (and earlier bearings investigations in the case of JTEKT) that the government would fundamentally alter the companies' speech rights by providing financial benefits only to those producers that supported an antidumping petition. The Supreme Court has stated that the "aim of the presumption [against retroactivity] is to avoid unnecessary *post hoc* changes to legal rules on which parties relied in shaping their primary conduct." Republic of Austria v. Altmann, 541 U.S. 677, 696 (2004). The Court then goes on to quote Justice Scalia's concurrence in Landgraf:

> The critical issue, I think, is not whether the rule affects 'vested rights,' or governs substance or procedure, but rather what is the relevant activity that the rule regulates. Absent clear statement otherwise, only

such relevant activity which occurs *after* the effective date of the statute is covered.  Most statutes are meant to regulate primary conduct, and hence will not be applied in trials involving conduct that occurred before their effective date.  But other statutes have a different purpose and therefore a different relevant retroactivity event.

Id. at 698 n.17, quoting Landgraf, 511 U.S. at 291 (Scalia, J., concurring).

This Court has held that "the purpose of the Byrd Amendment's limitation of eligible recipients was to reward injured parties who assisted government enforcement of the antidumping laws by initiating or supporting antidumping proceedings." SKF USA Inc. v. U.S. Customs & Border Prot., 556 F.3d 1337, 1352 (Fed. Cir. 2009) ("SKF").  In other words, this Court has interpreted the purpose of the CDSOA as rewarding companies for their litigation support activities.  This purpose directly regulates parties' primary conduct during an antidumping duty investigation.  During the antidumping duty investigations, SKF USA and JTEKT relied upon the then-existing legal rules when they decided not to "check the box" and support the AFBs antidumping petition.  The CDSOA's enactment then retroactively altered these incentives and imposed "unnecessary *post hoc* changes to legal rules on which parties relied in shaping their primary conduct." Republic of Austria, 541 U.S. at 696.

If SKF USA and JTEKT had anticipated such a dramatic altering of the law, their conduct may have been different and they likely would have had no choice but to express support for the antidumping petition, thus avoiding the CDSOA's

negative effect.  See Lawrence v. Anheuser-Busch, 523 A.2d 864, 871 (R.I. 1987) (retroactive application of law held "repugnant to due process" because, inter alia, the person to whom the statute was applied retroactively might have easily altered his conduct had he known of the potential liability).  Thus, the CDSOA impermissibly attaches liability to conduct that could have been easily altered had SKF USA and JTEKT known of the potential liability.

Specifically, the CDSOA attached a new disability as applied to SKF USA and JTEKT.  The CDSOA provided monetary payments to their direct U.S. competitors that engaged in the favored conduct, while denying such payments to SKF USA and JTEKT because they did not support the petition.[2]  This payment resulted in, and continues to result in, direct competitive injury to SKF USA and JTEKT – i.e., a "new disability" based on "considerations in the past."  The CIT has found that CDSOA disbursements cause injury to the recipients' direct competitors.  "Nor can it be seriously questioned that a direct payment to, i.e., conferring of a subsidy on, a direct competitor may be sufficient to cause increased

---

[2] CDSOA distributions have in fact provided a windfall to SKF USA and JTEKT's direct domestic competitors.  For example, The Timken Company, its subsidiary MPB Corporation, and the Torrington Company (acquired by Timken in 2003) received approximately $395 million in CDSOA distributions between 2001 and 2004.  See Issues and Effects of Implementing the Continued Dumping and Subsidy Offset Act, GAO-05-979, at 29 & n.39 (Sept. 2005), available at http://www.gao.gov/new.items/d05979.pdf.

competition and therefore 'a concrete and particularized injury' that is 'actual or imminent.'" <u>Canadian Lumber Trade Alliance</u>, 425 F. Supp. 2d 1321, 1337 (Ct. Int'l Trade 2006) (<u>citing, e.g.</u>, <u>W. Lynn Creamery, Inc. v. Healy</u>, 512 U.S. 186, 195 n.10 & 196 n.12 (1994)), <u>aff'd</u>, 517 F.3d 1319 (Fed. Cir. 2008).

In fact, the CIT stated that it is "axiomatic that subsidies harm competitors." <u>Id.</u> at 1338 (<u>citing</u> <u>W. Lynn Creamery</u>, 512 U.S. at 195 n.10). In a case involving a different aspect of the CDSOA, the CIT found it to be "apparent that the Plaintiffs' sales may be diverted to a competitor that is better able to compete as a result of the Byrd Amendment distributions." <u>Id.</u> at 1340. "Relatedly, Plaintiffs' comparative advantage may be undermined thereby reducing the price they may charge (and therefore reducing their own profit margins)." <u>Id.</u> This Court affirmed the CIT's decision based on the plain conclusion that CDSOA disbursements prejudice the recipients' competitors in numerous ways. This Court added that "[l]oss of market share is certainly an economic injury, and it is quite rational to infer that Customs, by distributing money to an entity that aims to take away market share from [Plaintiff] and has already been somewhat successful in that effort, is likely to inflict further economic injury on the [Plaintiff]." <u>Canadian Lumber Trade Alliance</u>, 517 F.3d at 1334.

This Court has stated that in order to determine whether a statute has impermissible retroactive effects, it should consider (1) the nature and extent of the

change of the law, (2) the degree of connection between the operation of the new rule and a relevant past event, and (3) familiar considerations of fair notice, reasonable reliance, and settled expectations.  See Princess Cruises, Inc. v. United States, 397 F.3d 1358, 1362-63 (Fed. Cir. 2005), quoting Landgraf, 511 U.S. at 269-70.  The CDSOA in fact created impermissible effects on SKF USA and JTEKT under each of these factors.

First, the CDSOA profoundly changed the nature of the antidumping law.  It changed the regime from a remedial one to a system that subsidized certain domestic products at the competitive expense of others.  It immediately and significantly altered the conditions of competition among all domestic producers.  The fact that the statute has been continually challenged in U.S. and foreign legal fora, ruled inconsistent with the United States' international legal obligations, and then repealed by Congress, further indicates that it was a major change in the nature and extent of the law.

Second, the degree of connection between the operation of the new rule and a relevant past event weighs in favor of SKF USA and JTEKT.  There is a direct connection between the CDSOA's petition support requirement and SKF USA and JTEKT's past statements in opposition to the AFB petition.

Finally, considerations of reasonable reliance and settled expectations also favor SKF USA and JTEKT.  "Elementary considerations of fairness dictate that

individuals should have an opportunity to know what the law is and to conform their conduct accordingly; settled expectations should not be lightly disrupted." Landgraf, 511 U.S. at 265.  When SKF USA and JTEKT took a position on the original petition, they did so based on a reasonable reliance that their position would be used only in the ITC's injury analysis, and not to competitively burden the company.  SKF USA and JTEKT had settled expectations based on current law and practice that their conduct would not result in financial benefit to their competitors or competitive harm to themselves.  These equitable considerations were upended by the retroactive application of the CDSOA.  See, e.g., Martin v. Hadix, 527 U.S. 343, 360 (1999) (declining to apply an attorney fees provision retroactively because to "impose the new standards now, for work performed before the PLRA became effective, would upset the reasonable expectations of the parties."); Monoson v. United States, 516 F.3d 163, 168 n.2 (3d Cir. 2008) (distinguishing the importance of parties' expectations in a case such as Landgraf, which involved equitable relief applicable *in futuro*, and a claim for money damages).

### B. The Retroactive Effects of the CDSOA Are Not Supported by a Legitimate Legislative Purpose

When evaluating a retroactive law under the Due Process Clause, courts examine whether the retroactive application of a statute is supported by a legitimate legislative purpose.  See Pension Benefit Guaranty Corp. v. R.A. Gray

& Co., 467 U.S. 717, 729 (1984). In addition, courts will consider whether the person to whom the government is applying the law retroactively could have anticipated the potential liability attached to its chosen conduct and avoided the liability by altering its conduct. See Usery, 428 U.S. at 17-18 & n.16; Mojica v. Reno, 970 F. Supp. 130, 170 (E.D.N.Y. 1997) (retroactive laws analyzed under due process clause to see if they upset and frustrate expectations), aff'd on other grounds, 157 F.3d 106 (2d Cir. 1998). Courts will also examine retroactive legislation to determine whether the legislature is using the legislation as a means of retribution. See Eastern Enters. v. Apfel, 524 U.S. 498, 548 (1998) (Kennedy, J., concurring and dissenting in part). Finally, courts will examine the degree of retroactive effect. Id.; see 16B Am. Jur. 2d Constitutional Law § 692 (1998).

When the CDSOA, as applied to certain producers whose speech occurred prior to the law's enactment, is evaluated under these factors, it is clear that the law exceeds the Due Process Clause's limitation for retroactive statutes. First, the retroactive aspect of the CDSOA, as applied to these certain producers, is not rationally related to a legitimate government purpose. The government does not have a rational basis for determining eligibility for CDSOA disbursements today based on speech and conduct that occurred as many as twenty or thirty years ago. Rewarding speech and conduct that occurred prior to the enactment of the CDSOA will not further the governmental purposes of preventing dumping or enforcing the

trade laws. See SKF, 556 F.3d at 1355. Domestic parties must have prior notice of the possibility of CDSOA distributions in order for such distributions (and the eligibility process for receipt thereof) to further these purposes.

For this reason, the CIT was incorrect to state that "[i]t was not arbitrary or irrational for Congress to conclude that the legislative purpose of rewarding domestic producers who supported antidumping petitions . . . would be 'more fully effectuated' if the petition support requirement were applied both prospectively and retroactively." Pat Huval II, 823 F. Supp. 2d at 1377 (JA0011), quoting New Hampshire Ball Bearing v. United States, 815 F. Supp. 2d 1301, 1309 (Ct. Int'l Trade 2013). This Court found that the CDSOA's purpose was not solely to compensate injured domestic producers, and it was "simply implausible" to use petition support as a proxy for injury. SKF, 556 F.3d at 1350-51. Rather, the purpose of the petition support requirement was to reward parties that assisted government enforcement of the trade laws. This legislative purpose – i.e., incentivizing litigation support activities that aid enforcement of the trade laws – is only rationally related to post-enactment orders where domestic producers had notice of the CDSOA's provisions. To reward pre-enactment litigation support activities would be gratuitous and unrelated to the goal of motivating compliance with governmental policy.

Second, the retroactive application of the CDSOA is not rationally related to the government's interests because not all parties that qualify as ADPs receive distributions. Many companies that actively aided the government's enforcement of the antidumping law do not receive distributions because no funds are available under those orders. Accordingly, retroactive application of the petition support requirement is not rationally related to the putative legitimate government purpose of rewarding litigation support activities.

Third, when evaluated to determine whether the law was created as a means of retribution, the CDSOA also fails. The successorship provisions of the law deny CDSOA disbursements to companies that opposed petitions in a manner that can only be understood as retribution. Specifically, these successor provisions deny any and all CDSOA disbursements, ad infinitum, to any company that opposed a petition irrespective of whether it acquires a company that supported a petition. In contrast, any other company, such as Timken, that acquires a company that supported a petition is immediately and fully eligible for CDSOA disbursements. See 19 U.S.C. § 1675c(b)(1); 19 C.F.R. § 159.61(b). Thus, through the CDSOA, Congress has attempted to exact retribution against certain domestic producers, while lining the pockets of an influential few. See Landgraf, 511 U.S. at 267 & n.20 (citing The Federalist No. 44, at 301 (James Madison)).

Finally, the retroactive effect of the CDSOA is equally offensive to the Due Process Clause because of its severity. In the case of SKF USA and JTEKT, the CDSOA and Defendants' application thereof are denying a benefit to SKF USA and JTEKT based on speech occurring over 20 years ago. A law under which five members of the domestic industry (three of which are Timken companies) have received over one half billion dollars, or over half of all distributions under the CDSOA, but other domestic producers have received nothing, based on speech that occurred over 20 years ago, clearly has such a severe retroactive effect that it cannot withstand due process scrutiny. See, e.g., Eastern Enters., 524 U.S. at 549 (law with 35-year retroactive effect "unprecedented [in] scope") (Kennedy, J., concurring and dissenting in part).

## III. SKF USA'S COMPLAINT FOR FISCAL YEAR 2004 DISTRIBUTIONS WAS TIMELY FILED

The CIT's final decision found that SKF USA's complaint for fiscal year 2004 distributions (Court No. 06-00328) was not timely filed. This decision was apparently made in order to conform to this Court's statements regarding the commencement of the statute of limitations for a different CDSOA claim in SKF. The CIT found that SKF USA's fiscal year 2004 claim was brought outside the two-year statute of limitations under 28 U.S.C. § 2636(i). Specifically, it decided that the claim "first accrued" when the government published its notice of intent to

distribute CDSOA monies, not when the distributions were actually made to SKF USA's competitors.  See Pat Huval II, 823 F. Supp. 2d at 1374 (JA0008).

However, this is not a proper interpretation of the statute, and not one required by this Court's decision in SKF.  In fact, the CIT had previously determined in an interlocutory opinion that SKF USA's complaint was timely.  See Pat Huval I, 547 F. Supp. 2d at 1362 (JA0024) (denying Timken's motion to dismiss based on statute of limitations and concluding "Plaintiffs' claims arising under the Constitution that make facial challenges to the Byrd Amendment are not time-barred to the extent that they seek relief for Byrd distributions made during the two-year periods ending with commencement of their respective suits.").  This ruling was based on the CIT's conclusion that "a new cause of action accrued every time payments were made pursuant to that statutory scheme."  Id. at 1361-62 (JA0024).

This interlocutory opinion was correct and consistent with SKF.  The continuing violation theory is supported by the facts and not precluded by this Court's decision in SKF.

In SKF, this Court found that the "earliest SKF's claim could have accrued was when Customs published its notice of intent to distribute duties under Byrd Amendment for fiscal year 2005 and invited potentially eligible producers to file certifications requesting a share of the distributions."  SKF, 556 F.3d at 1349

(emphasis added). Yet this Court did not address whether any of SKF USA's causes of action may have accrued at a later date as well, including under a continuing or repeating violation theory. It did not need to address this issue because even under its analysis of the earliest date that SKF USA's cause of action could have accrued, SKF USA's action was timely.

The SKF decision does not conflict in any way with the CIT's interlocutory finding in Pat Huval I that a "new cause of action accrued every time payments were made pursuant to that statutory scheme." Pat Huval I, 547 F. Supp. 2d at 1361-62 (emphasis added) (JA0024).[3] Under the continuing violation doctrine, the CIT originally found that a new cause of action accrues when CDSOA distributions are made, even if additional causes of action may have accrued previously:

> Although acts taken outside the statute of limitations period (*i.e.*, passage of the Byrd Amendment and the ITC's initial compilation of

---

[3] While the decision in Pat Huval I involved facial constitutional challenges, its reasoning and conclusion apply equally to the "as applied" constitutional challenges raised in this case. "For the continuing violation doctrine to apply, the Plaintiff's 'claim must be inherently susceptible to being broken down into a series of independent and distinct events or wrongs, each having its own associated damages.'" Pat Huval I, 547 F. Supp. 2d at 1360 (JA0022), quoting Brown Park Estates-Fairfield Dev. Co. v. United States, 127 F.3d 1449, 1456 (Fed. Cir. 1997). This principle applies equally to "as applied" claims. SKF USA suffered harm when Customs published its notice of intent to distribute CDSOA duties, as well as when the duties were distributed, because Customs and the ITC applied the CDSOA in an unconstitutional manner as to SKF USA.

the ADP lists) may have been independently actionable, those earlier
acts do not insulate from judicial scrutiny later developments by
which the Byrd Amendment deprived Plaintiffs of Byrd distributions
while paying them to competitors. "A series of wrongful acts . . .
creates a series of claims. . . . [T]he fact that [a defendant] has been
violating the Constitution for a generation does not permit it to
commit fresh violations."

Id. at 1362 (JA0024) (quoting Palmer v. Bd. of Ed., 46 F.3d 682, 686 (7th

Cir. 1995)).

The CIT apparently reversed its decision in its final judgment because

it originally "reached a different conclusion than did the Court of Appeals in

SKF USA II as to the earliest date on which a cause of action challenging

the Byrd Amendment could accrue." Pat Huval II, 823 F. Supp. 2d at 1375

n.12 (JA0009) ("Having entered no judgment on the claims that we did not

dismiss following our earlier opinion, we consider the statute of limitations

questions anew based on the relevant guidance in SKF USA II."). However,

the CIT's original decision was correct and should not have been

reconsidered. This Court never addressed the latest date that SKF USA's

cause of action could have accrued in SKF, nor did it consider the

continuing violation doctrine. Therefore, the two decisions opined on

separate issues, and the SKF decision is not dispositive of the statute of

limitations issue in this case.

Since the CIT's original continuing violation approach was correct and SKF USA's claim for fiscal year 2004 distributions was timely, this Court should reverse the CIT's statute of limitations decision in <u>Pat Huval II</u>.

## IV. JTEKT'S COMPLAINTS FOR FISCAL YEAR 2004 AND FISCAL YEAR 2006 DISTRIBUTIONS WERE TIMELY FILED

For the reasons stated above in the SKF USA section on the statute of limitations issue, JTEKT's fiscal year 2004 claim should not be barred by the statute of limitations. Further, the CIT's decision that JTEKT's fiscal year 2006 claim was barred by the statute of limitations is erroneous, and should be reversed.

Due to the uncertainty over which event would trigger the running of the statute of limitations (that is, either distribution of funds or the notice of intent to distribute), JTEKT included fiscal year 2006 challenges in both its September 25, 2006 complaint in CIT court number 06-00324 and its September 30, 2008 complaint in CIT court number 08-00340. The CIT consolidated all of JTEKT's CDSOA cases into the <u>Pat Huval</u> case, but apparently did not understand that fiscal year 2006 was included in both complaints, so that regardless of the event used for statute of limitations purposes, the fiscal year 2006 claim would still be viable. Thus, the CIT decision should be reversed as to JTEKT's statute of limitations issues.

## CONCLUSION

For the foregoing reasons, the judgment of the CIT should be reversed as to the due process claims and statute of limitations issues, and remanded with instructions to enter judgment ordering the government to certify SKF USA and JTEKT as eligible recipients of CDSOA distributions.

Respectfully submitted,

/s/ John M. Gurley
John M. Gurley
Nancy A. Noonan
Diana Dimitriu-Quaia
ARENT FOX LLP
1717 K Street, N.W.
Washington, DC 20036
(202) 857-6000
john.gurley@arentfox.com

*Counsel for JTEKT North America Corporation*

Date:  July 21, 2014

/s/ Herbert C. Shelley
Herbert C. Shelley
STEPTOE & JOHNSON LLP
1330 Connecticut Ave., NW
Washington, DC 20036
Tel.:  (202) 429-8146
Hshelley@steptoe.com

*Counsel for SKF USA Inc.*

# Addendum



**PAT HUVAL RESTAURANT & OYSTER BAR, INC., et al., Plaintiffs, v. UNITED STATES INTERNATIONAL TRADE COMMISSION, et al., Defendants, and THE TIMKEN COMPANY and MPB CORPORATION, Defendant Intervenors.**

**Consol. Court No. 06-00290**

**UNITED STATES COURT OF INTERNATIONAL TRADE**

*823 F. Supp. 2d 1365*; *34 Int'l Trade Rep. (BNA) 1270*; *2012 Ct. Intl. Trade LEXIS 28*; *SLIP OP. 2012-27*

**March 1, 2012, Decided**

**SUBSEQUENT HISTORY:** Injunction denied by *Pat Huval Rest. & Oyster Bar, Inc. v. United States ITC, 2012 U.S. App. LEXIS 5015 (Fed. Cir., Mar. 8, 2012)*

**PRIOR HISTORY:** *Pat Huval Rest. & Oyster Bar, Inc. v. United States, 547 F. Supp. 2d 1352, 32 Ct. Int'l Trade 232, 2008 Ct. Intl. Trade LEXIS 23 (2008)*

**DISPOSITION:** [**1] Dismissing the consolidated action for failure to state a claim upon which relief can be granted and for lack of subject matter jurisdiction.

**CASE SUMMARY:**

**OVERVIEW:** This action was consolidated from cases brought by plaintiffs (producers denied "affected domestic producer" status) challenging the constitutionality of the Continued Dumping and Subsidy Offset Act of 2000, *19 U.S.C.S. § 1675c* (repealed 2006), and the administration of the statute. Plaintiffs' facial and "as applied" challenges under *U.S. Const. amend. I*, and the *Equal Protection Clause* of *U.S. Const. amend. V* were foreclosed by binding precedent (SKF USA II). Claims to that effect therefore were dismissed pursuant to Ct Int'l Trade R. 12(b)(5) for failure to state a claim.

**OUTCOME:** Action dismissed.

**LexisNexis(R) Headnotes**

*Administrative Law > Judicial Review > Reviewability > Jurisdiction & Venue*
*International Trade Law > Imports & Exports > Duties, Fees & Taxes > General Overview*
[HN1] Section 201 of the Customs Courts Act of 1980, codified at *28 U.S.C.S. § 1581(i)(4)*, grants the U.S. Court of International Trade exclusive jurisdiction of any civil action commenced against the United States that arises out of any law providing for administration and enforcement with respect to, inter alia, the matters referred to in *§ 1581(i)(2)*, which are "tariffs, duties, fees, or other taxes on the importation of merchandise for reasons other than the raising of revenue." The Continued Dumping and Subsidy Offset Act of 2000, *19 U.S.C.S. § 1675c* (repealed 2006) is such a law.

*Constitutional Law > Bill of Rights > Fundamental Freedoms > Freedom of Speech > General Overview*
*Constitutional Law > Equal Protection > General Overview*
*International Trade Law > Imports & Exports > General Overview*
[HN2] The Byrd Amendment (the Continued Dumping

Case: 12-1250 Case: 12-1250CASE PARTICIPANTS ONLY Document: 39-69 Document: 68 Page: 68 Filed: 07/29/2014Filed: 07/21/2014

Page 2

823 F. Supp. 2d 1365, *; 34 Int'l Trade Rep. (BNA) 1270;
2012 Ct. Intl. Trade LEXIS 28, **1; SLIP OP. 2012-27

and Subsidy Offset Act of 2000, *19 U.S.C.S. § 1675c* (repealed 2006)) is within the constitutional power of Congress to enact, furthers the government's substantial interest in enforcing the trade laws, and is not overly broad. The Byrd Amendment is valid under *U.S. Const. amend. I.* Because it serves a substantial government interest, the Byrd Amendment is also clearly not violative of equal protection under the rational basis standard.

***Governments > Legislation > Statutes of Limitations > Time Limitations***
[HN3] A cause of action accrues when all events necessary to fix the alleged liability of the defendant have occurred.

***International Trade Law > Imports & Exports > General Overview***
***International Trade Law > U.S. International Trade Commission Determinations > General Overview***
[HN4] U.S. Customs and Border Protection (CBP) does not have discretion to add potential affected domestic producers (ADPs) to the International Trade Commission's list based on CBP's own determination of petition support. *19 U.S.C.S. § 1675c(d)(2)* provides that the notice of intention to distribute is to include "the list of affected domestic producers potentially eligible for the distribution based on the list obtained from the Commission."

***Governments > Legislation > Statutes of Limitations > Judicial Review***
***International Trade Law > Imports & Exports > General Overview***
[HN5] The statute of limitations in *28 U.S.C.S. § 2636(i)* is jurisdictional.

***Governments > Legislation > Statutes of Limitations > Time Limitations***
***International Trade Law > Imports & Exports > General Overview***
[HN6] The date on which a cause of action of a domestic party bringing a constitutional challenge to the Byrd Amendment (the Continued Dumping and Subsidy Offset Act of 2000, *19 U.S.C.S. § 1675c* (repealed 2006)) accrues must be determined according to the specific facts giving rise to that claim.

***Governments > Legislation > Statutes of Limitations > Time Limitations***
***International Trade Law > Imports & Exports > General Overview***
[HN7] A claim may accrue for a particular fiscal year once it is known that Byrd Amendment (Continued Dumping and Subsidy Offset Act of 2000, *19 U.S.C.S. § 1675c* (repealed 2006)) distributions would be available for that year, rather than once a plaintiff suffered the annual injury caused by the payments made to their direct domestic competitor.

***Civil Procedure > Judgments > Relief From Judgment > General Overview***
***International Trade Law > U.S. Court of International Trade Rules***
[HN8] The inapplicability of Ct. Int'l Trade R. 59(a) does not exhaust the court's power to reconsider its non final decisions. Instead, the court may reconsider its prior decision pursuant to its general authority, which is recognized by Ct. Int'l Trade R. Rule 54, to reconsider a non final order prior to entering final judgment.

***Constitutional Law > Bill of Rights > Fundamental Freedoms > Freedom of Speech > General Overview***
***Constitutional Law > Equal Protection > General Overview***
***International Trade Law > Imports & Exports > General Overview***
[HN9] In SKF USA II, the U.S. Court of Appeals for the Federal Circuit held that the Continued Dumping and Subsidy Offset Act of 2000, *19 U.S.C.S. § 1675c* (repealed 2006) did not violate constitutional *U.S. Const. amend. I* or equal protection principles as applied to SKF in that case.

***Civil Procedure > Judgments > Preclusion & Effect of Judgments > Estoppel > Collateral Estoppel***
***Civil Procedure > Judgments > Preclusion & Effect of Judgments > Res Judicata***
[HN10] Under res judicata, a final judgment on the merits bars further claims by parties or their privies based on the same cause of action. Under the doctrine of collateral estoppel, or issue preclusion, a litigant who has litigated an issue in a full and fair proceeding is estopped from relitigating the same issue in a subsequent proceeding.

823 F. Supp. 2d 1365, *; 34 Int'l Trade Rep. (BNA) 1270;
2012 Ct. Intl. Trade LEXIS 28, **1; SLIP OP. 2012-27

**Constitutional Law > Bill of Rights > Fundamental Rights > Procedural Due Process > Scope of Protection**
**Governments > Legislation > Effect & Operation > Retrospective Operation**
**International Trade Law > Imports & Exports > General Overview**
[HN11] The retroactive reach of the petition support requirement in the Continued Dumping and Subsidy Offset Act of 2000, *19 U.S.C.S. § 1675c* (repealed 2006) is justified by a rational legislative purpose and therefore is not vulnerable to attack on constitutional due process grounds. It was not arbitrary or irrational for Congress to conclude that the legislative purpose of rewarding domestic producers who supported antidumping petitions would be more fully effectuated if the petition support requirement were applied both prospectively and retroactively.

**Constitutional Law > Bill of Rights > Fundamental Rights > Procedural Due Process > Scope of Protection**
[HN12] The first inquiry in every due process challenge is whether the plaintiff has been deprived of a protected interest in "property" or "liberty." In the absence of such a property interest, there can have been no violation of procedural due process.

**Constitutional Law > Congressional Duties & Powers > Ex Post Facto Clause & Bills of Attainder > Bills of Attainder**
[HN13] A bill of attainder is a legislative act which inflicts punishment without a judicial trial. Legislative acts, no matter what their form, that apply either to named individuals or to easily ascertainable members of a group in such a way as to inflict punishment on them without a judicial trial are bills of attainder prohibited by the U.S. Constitution.

**Constitutional Law > Congressional Duties & Powers > Ex Post Facto Clause & Bills of Attainder > Bills of Attainder**
**International Trade Law > Imports & Exports > General Overview**
[HN14] The Continued Dumping and Subsidy Offset Act of 2000, *19 U.S.C.S. § 1675c* (repealed 2006) is not a bill of attainder.

**International Trade Law > Imports & Exports >**

**General Overview**
**International Trade Law > U.S. International Trade Commission Determinations > General Overview**
[HN15] In the case of orders in place at the time the Continued Dumping and Subsidy Offset Act of 2000 (CDSOA), *19 U.S.C.S. § 1675c* (repealed 2006) was enacted, the CDSOA required the International Trade Commission to base its eligibility determination retroactively on the basis of petition support. *19 U.S.C.S. § 1675c(b)(1)(A)* (an affected domestic producer must have been a petitioner or interested party in support of the petition with respect to which an antidumping duty order has been entered.), *§ 1675c(d)(1)* (The Commission shall forward to Customs and Border protection in the case of orders or findings in effect on January 1, 1999 or thereafter a list of persons that indicate support of the petition by letter or through questionnaire response).

**Civil Procedure > Pleading & Practice > Defenses, Demurrers & Objections > Failures to State Claims**
**Civil Procedure > Pleading & Practice > Pleadings > Complaints > Requirements**
[HN16] A complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.

**Administrative Law > Judicial Review > Reviewability > Jurisdiction & Venue**
[HN17] *5 U.S.C.S. §§ 702, 704* authorize persons aggrieved by certain types of final agency action to seek judicial review thereof.

**Constitutional Law > The Judiciary > Case or Controversy > General Overview**
**Constitutional Law > The Judiciary > Case or Controversy > Mootness > General Overview**
**Constitutional Law > The Judiciary > Case or Controversy > Standing > Elements**
[HN18] The U.S. Constitution permits a federal court to exercise jurisdiction only over a live case or controversy. U.S. Const. art. III, § 2. In order to satisfy the case or controversy requirement, a litigant must have suffered some actual injury that can be redressed by a favorable judicial decision. If the issue presented is no longer "live" or the parties lack a legally cognizable interest in the outcome, the case is moot.

823 F. Supp. 2d 1365, *; 34 Int'l Trade Rep. (BNA) 1270;
2012 Ct. Intl. Trade LEXIS 28, **1; SLIP OP. 2012-27

*Civil Procedure > Remedies > Injunctions > Preliminary & Temporary Injunctions*

[HN19] A preliminary injunction normally dissolves upon the entry of judgment. The purpose of a preliminary injunction is to preserve the status quo until the merits of the action are ultimately determined.

*Civil Procedure > Remedies > Injunctions > Permanent Injunctions*

[HN20] It is required for a permanent injunction that a plaintiff have suffered an irreparable injury, that the remedies available at law be inadequate to compensate for that injury, that considering the balance of hardships between the parties, a remedy in equity be warranted, and that the public interest would not be disserved by a permanent injunction.

*Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > General Overview*
*Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Supplemental Jurisdiction > General Overview*
*International Trade Law > Imports & Exports > General Overview*

[HN21] The U.S. Court of International Trade's subject matter jurisdiction under *28 U.S.C.S. § 1581(i)* is limited to civil actions against the United States, its agencies, or its officers. The court has limited jurisdiction over counterclaims, cross claims, or third party actions. *28 U.S.C.S. § 1583*. Nor may it invoke supplemental jurisdiction as granted by Congress to the district courts, *28 U.S.C.S. § 1367*, or common law pendant or ancillary jurisdiction.

**COUNSEL:** Jacques Pierre Soileau, Soileau & Soileau of Breaux Bridge, LA, for Plaintiffs Pat Huval Restaurant & Oyster Bar, Inc., Aqua Farms Crawfish, Inc., Catfish Wholesale, Inc., Charles Bernard (d/b/a/ Charles' Crawfish Pad), Andre Leger (d/b/a/ Chez Francois), Jim Fruge (d/b/a/ Acadiana Fisherman's Co op), J. Bernard Seafood Processing, Inc., and Frank Melancon (d/b/a French's Enterprises Seafood Peeling Plant).

Herbert Carl Shelley, Alice Alexandra Kipel, Laura Rose Ardito, and Michael Thomas Gershberg, Steptoe & Johnson, LLP of Washington, DC, for Plaintiff SKF USA, Inc.

John Marshall Gurley, and Nancy Aileen Noonan, Arent

Fox, LLP, of Washington, DC, for Plaintiff Koyo Corporation of U.S.A.

David S. Silverbrand, Courtney S. McNamara, Michael J. Dierberg, and Todd M. Hughes, Trial Attorneys, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, for Defendant United States Customs and Border Protection. With them on the briefs were Tony West, Assistant Attorney General, Jeanne E. Davidson, Director, Franklin [**2] E. White, Jr., Assistant Director, and Andrew G. Jones, Office of Assistant Chief Counsel, United States Customs and Border Protection, of counsel.

Patrick V. Gallagher, Jr., Attorney Advisor, Office of the General Counsel, U.S. International Trade Commission, of Washington, DC, for Defendant, U.S. International Trade Commission. With him on the briefs were James M. Lyons, General Counsel, and Neal J. Reynolds, Assistant General Counsel for Litigation.

Geert De Prest, Terence P. Stewart, Amy S. Dwyer, and Patrick J. McDonough, Stewart and Stewart, of Washington, DC, for Defendant Intervenors.

**JUDGES:** Before: Gregory W. Carman, Judge, Timothy C. Stanceu, Judge, Leo M. Gordon, Judge.

**OPINION BY:** Gregory W. Carman

**OPINION**

[*1369] **CARMAN, JUDGE**: This action has been consolidated from six cases brought by a group of eight domestic producers of processed crawfish tail meat (collectively, the "Pat Huval Plaintiffs"), [1] Koyo Corporation of U.S.A. ("Koyo"), [2] and SKF USA, Inc. ("SKF"), [3] challenging the constitutionality of the Continued Dumping and Subsidy Offset Act of 2000 ("CDSOA" or "Byrd Amendment"), and the administration of the statute by Defendants. [4] These cases were consolidated by order of the Court under Consol. Ct. No. [**3] 06 00290. (Order (Feb. 23, 2007), ECF No. 91; Order (Mar. 16, 2011), ECF No. 207.) Plaintiffs claim that they unlawfully were denied affected domestic producer ("ADP") status, which would have qualified them to receive distributions under the CDSOA.

    1   Second Supp. and Am. Compl., Ct. No. 06
    00290, Nov. 8, 2006, ECF No. 72 ("Compl. 1").
    2   Compl., Ct. No. 06 00324, Sept. 25, 2006,

ECF No. 4 ("Compl. 2"); Compl., Ct. No. 08 00340, Sept. 30, 2008, ECF No. 2 ("Compl. 5"); Compl., Ct. No. 10 00001, Jan. 7, 2010, ECF No. 2 ("Compl. 6").

3    Compl., Ct. No. 06 00328, Sept. 29, 2006, ECF No. 4 ("Compl. 3"); Compl., Ct. No. 07 00035, Feb. 5, 2007, ECF No. 4 ("Compl. 4")

4    Pub. L. No. 106 387, §§ 1001 1003, 114 Stat. 1549, 1549A 72 75 (codified at *19 U.S.C. § 1675c (2000)*), repealed by Deficit Reduction Act of 2005, Pub. L. 109 171, § 7601(a), 120 Stat. 4, 154 (Feb. 8, 2006; effective Oct. 1, 2007).

The case is now before the Court on dispositive motions. Defendants United States Customs and Border Protection ("CBP") and the United States International Trade Commission ("ITC") each move to dismiss Plaintiff's complaint for failure to state a claim upon which relief can be granted pursuant to *USCIT Rule 12(b)(5)*, [**4] and for judgment on the pleadings under *USCIT Rule 12(c)*. (Def. U.S. Customs and Border Prof.'s Mot. to Dismiss for Failure to State a Claim upon Which Relief Can Be Granted and for J. on the Pleadings ("CBP Mot."), May 6, 2011, ECF No. 219); (Def. U.S. Int'l Trade Comm'n's Mot. to Dismiss for Failure To State a Claim and For J. on the Pleadings ("ITC Mot."), May 2, 2011, ECF No. 215). Defendant Intervenors Timken US Corp. and MPB Corp. (collectively, "Timken") move for judgment on the pleadings pursuant to *USCIT Rule 12(c)* with respect to the complaints filed by SKF and Koyo. (Timken's Mot. for J. on the Pleadings with Respect to SKF's and Koyo's Compl.'s ("Timken Mot."), May 2, 2011, ECF No. 217.) For the reasons set forth below, Plaintiffs' consolidated action will be dismissed under *USCIT Rule 12(b)(5)* for failure to state a claim upon which relief can be granted, and under *USCIT Rule 12(b)(1)* on timeliness and mootness grounds.

## BACKGROUND

Certain background information is provided in our earlier opinion in this case, *Pat Huval Restaurant & Oyster Bar, Inc. v. United States, 32 CIT 232, 547* [*1370] *F. Supp. 2d 1352 (2008)*, and is supplemented herein.

The Pat Huval Plaintiffs [5] are domestic [**5] producers of crawfish tail meat who seek to obtain status as affected domestic producers and receive CDSOA disbursements from duties collected on an antidumping duty order on crawfish from China. (Compl. 1 at 10.) The

Pat Huval Plaintiffs have not received CDSOA distributions because "they did not indicate 'support' of the original 1996 crawfish antidumping petition." (Compl. 1 ¶ 22.)

5    The "Pat Huval Plaintiffs" are Pat Huval Restaurant & Oyster Bar, Inc., Aqua Farms Crawfish, Inc., Catfish Wholesale, Inc., Charles Bernard (d/b/a/ Charles' Crawfish Pad), Andre Leger (d/b/a Chez Francois), Jim Fruge (d/b/a Acadiana Fisherman's Co op), J. Bernard Seafood Processing, Inc., and Frank Melancon (d/b/a French's Enterprises Seafood Peeling Plant). (Compl. 1 ¶¶ 3 10.)

Plaintiff Koyo is a U.S. producer of tapered roller bearings and ball bearings. (See, e.g., Compl. 2 ¶ 1.) Koyo seeks through this litigation to obtain status as an affected domestic producer and receive CDSOA disbursements for Fiscal Years 2006 2009 from duties collected on 13 antidumping duty orders on tapered roller and ball bearings. (Compl. 2 ¶ 20; Compl. 5 ¶ 19; Compl. 6 ¶¶ 19 21.) Koyo states that it did not support any of [**6] the petitions that culminated in the issuance of those 13 orders. (See, e.g., Compl. 2 ¶¶ 16, 28 ("Koyo USA did not support the underlying antidumping duty investigations for the subject bearings orders"; see also Compl. 5 ¶¶ 15, 29; Compl. 6 ¶¶ 15, 30.) The ITC did not include Koyo on a list that it sent to Customs of producers potentially eligible for ADP status "for any of the fiscal years . . . since the promulgation of the CDSOA." (Compl. 2 ¶ 17; see also Compl. 5 ¶ 16; Compl. 6 ¶ 16.)

Plaintiff SKF is a U.S. manufacturer of antifriction bearings, including ball bearings. (See, e.g., Compl. 3 ¶ 1.) SKF also seeks to obtain status as an ADP and receive CDSOA disbursements for Fiscal Years 2004 and 2006 from duties collected on various antidumping duty orders on antifriction bearings. (Compl. 3 Prayer for Relief; Compl. 4 Prayer for Relief.) SKF alleges that it was considered "part of the domestic industry for [antifriction bearings]" but does not allege that it supported the petitions that culminated in the issuance of the relevant antidumping duty orders. (See Compl. 3 ¶ 26; Compl. 4 ¶ 37.) Because of its failure to support the petitions, SKF "has been denied status as an 'affected [**7] domestic producer' and, consequently, has been deemed ineligible to receive disbursements under the CDSOA." (Compl. 3 ¶ 38; Compl. 4 ¶ 52.)

Case: 12-1250 Case: 12-1250 CAFC-E-PARTICIPANTS ONLY Document: 69 Document: 43 Page: 68 Filed: 07/21/2014 Page: 43 Filed: 07/21/2014

Page 6

823 F. Supp. 2d 1365, *1370; 34 Int'l Trade Rep. (BNA) 1270;
2012 Ct. Intl. Trade LEXIS 28, **7; SLIP OP. 2012-27

In 2008, acting on motions to dismiss pursuant to *USCIT Rules 12(b)(1)* and *12(b)(5)*, we limited the relief Plaintiffs could obtain for their facial constitutional challenges, and limited which agency actions the Pat Huval Plaintiffs would be permitted to challenge in their Administrative Procedure Act (APA) claim. [6] *Pat Huval, 547 F. Supp. 2d at 1365*.

6 Specifically, we held that "Plaintiffs' claims bringing facial constitutional challenges to the Byrd Amendment are dismissed to the extent that they seek relief for Byrd distributions that occurred prior to the two year periods ending with commencement of their respective suits," and that "Count Two of the Crawfish Producers' complaint is dismissed insofar as the Crawfish Producers challenge agency actions that occurred prior to February 27, 2004." *Pat Huval, 547 F. Supp. 2d at 1365*.

## JURISDICTION

The Court exercises subject matter jurisdiction over this action pursuant to [HN1] *section 201* [*1371] of the Customs Courts Act of 1980, *28 U.S.C. § 1581(i)(4)*, which grants the Court of International Trade exclusive jurisdiction [**8] of any civil action commenced against the United States that arises out of any law providing for administration and enforcement with respect to, inter alia, the matters referred to in *§ 1581(i)(2)*, which are "tariffs, duties, fees, or other taxes on the importation of merchandise for reasons other than the raising of revenue." The CDSOA, under which this action arises, is such a law. See *Furniture Brands Int'l, Inc. v. United States, 35 CIT      ,      , 807 F. Supp. 2d 1301, 1307-10 (2011)*.

## DISCUSSION

The CDSOA amended the Tariff Act of 1930 to provide for an annual distribution (a "continuing dumping and subsidy offset") of duties assessed pursuant to an antidumping duty or countervailing duty order to affected domestic producers as reimbursements for qualifying expenditures. [7] *19 U.S.C. § 1675c(a) (d)*. ADP status is limited to petitioners, and interested parties in support of petitions, with respect to which antidumping and countervailing duty orders are entered, and who remain in operation. Id. *§ 1675c(b)(1)*. The CDSOA directed the ITC to forward to Customs, within sixty days after an antidumping or countervailing duty order is issued, lists

of persons with potential ADP status, [**9] i.e., "petitioners and persons with respect to each order and finding and a list of persons that indicate support of the petition by letter or through questionnaire response." Id. *§ 1675c(d)(1)*. The CDSOA also provided for distributions of antidumping and countervailing duties assessed pursuant to existing antidumping duty and countervailing duty orders and for this purpose directed the ITC to forward to CBP a list identifying potential ADPs "within 60 days after the effective date of this section in the case of orders or findings in effect on January 1, 1999 or thereafter . . . ." Id. The CDSOA directed CBP to publish in the Federal Register, prior to each distribution, lists of ADPs potentially eligible for distributions based on the lists obtained from the ITC, id. *§ 1675c(d)(2)*, and to distribute annually all funds, including accrued interest, from antidumping and countervailing duties received in the preceding fiscal year, id. *§ 1675c(d)(3), (e)*.

7 Congress repealed the CDSOA in 2006, but the repealing legislation provided that "[a]ll duties on entries of goods made and filed before October 1, 2007, that would [but for the legislation repealing the CDSOA], be distributed under [the [**10] CDSOA] shall be distributed as if [the CDSOA] had not been repealed." Deficit Reduction Act of 2005, Pub. L. No. 109 171, § 7601(b), 120 Stat. 4, 154 (2006). In 2010, Congress further limited CDSOA distributions by prohibiting payments with respect to entries of goods that as of December 8, 2010 were "(1) unliquidated; and (2)(A) not in litigation; and (B) not under an order of liquidation from the Department of Commerce." Claims Resolution Act of 2010, Pub. L. No. 111 291, § 822, 124 Stat. 3064, 3163 (2010).

The Court of Appeals, in SKF USA, Inc. v. U.S. Customs and Border Protection ("SKF USA II"), upheld the CDSOA against constitutional challenges brought on *First Amendment* and equal protection grounds. *SKF USA, Inc. v. U.S. Customs and Border Protection, 556 F.3d 1337, 1360* [HN2] ("[T]he Byrd Amendment is within the constitutional power of Congress to enact, furthers the government's substantial interest in enforcing the trade laws, and is not overly broad. We hold that the Byrd Amendment is valid under the *First Amendment*."); id. ("Because it serves a substantial government interest, the Byrd [*1372] Amendment [**11] is also clearly not violative of equal protection under the rational basis

standard."). [8]

[8] SKF USA II reversed the decision of the Court of International Trade in *SKF USA Inc. v. United States, 30 CIT 1433, 451 F. Supp. 2d 1355 (2006)* ("SKF USA I"), which held the petition support requirement of the CDSOA unconstitutional on *Fifth Amendment* equal protection grounds.

## I. Claims Asserted in This Consolidated Action

### A. Claims Common To All Plaintiffs

All Plaintiffs Koyo, SKF, and the Pat Huval Plaintiffs challenge the constitutionality of Defendants' application of the CDSOA on three grounds. First, they challenge the "in support of the petition" requirement of the CDSOA ("petition support requirement"), as it was applied to each of them, on *First Amendment* grounds. [9] (Compl. 1 ¶¶ 38 39, Compl. 2 ¶¶ 53 56, Compl. 3 ¶¶ 44 46, Compl. 4 ¶¶ 58 60, Compl. 5 ¶¶ 59 62, Compl. 6 ¶¶ 58 61.) Second, all Plaintiffs challenge the petition support requirement, as applied, on *Fifth Amendment* equal protection grounds. (Compl 1 ¶¶ 35 37, Compl. 2 ¶¶ 61 64, Compl. 3 ¶¶ 47 50, Compl. 4 ¶¶ 61 64, Compl. 5 ¶¶ 67 70, Compl. 6 ¶¶ 66 69.) Third, all Plaintiffs claim that the petition support requirement violates [**12] the *Fifth Amendment* due process guarantee in basing their eligibility for disbursements on past conduct, i.e., support for a petition. (Compl. 1 ¶¶ 29 30, Compl. 2 ¶¶ 69 71, Compl. 3 ¶¶ 51 53, Compl. 4 ¶¶ 65 67, Compl. 5 ¶¶ 75 77, Compl. 6 ¶¶ 74 76.)

[9] Plaintiffs SKF and Koyo both claim that the CDSOA violated not only their *First Amendment* right to free speech, but also their right to petition the government for redress of grievances. "Although the right to petition and the right to free speech are separate guarantees, they are related and generally subject to the same constitutional analysis." *Wayte v. United States, 470 U.S. 598, 611 n.11, 105 S. Ct. 1524, 84 L. Ed. 2d 547 (1985)* (citing *NAACP v. Claiborne Hardware Co., 458 U.S. 886, 911 915, 102 S. Ct. 3409, 73 L. Ed. 2d 1215 (1982)).* Because SKF and Koyo do not allege that the CDSOA burdened the right to free speech in a different manner than the right to petition, the Court will view these claims as essentially the same. See id.

### B. Claims Exclusive to the Pat Huval Plaintiffs

The Pat Huval Plaintiffs bring three claims distinguishable from those brought by SKF or Koyo. First, the Pat Huval Plaintiffs claim that the CDSOA conferred upon them a vested property interest, of which they have been unreasonably [**13] deprived without notice or hearing, in violation of the *due process clause of the Fifth Amendment*. (Compl. 1 ¶¶ 27 28.) Second, the Pat Huval Plaintiffs claim that the actions of the ITC and CBP to adjudicate a right bestowed in 2000 based on a proceeding that took place in 1996 were arbitrary, capricious and an abuse of discretion in violation of the APA. (Id. ¶¶ 31 34.) Last, the Pat Huval Plaintiffs claim that the CDSOA is an unconstitutional Bill of Attainder in violation of the *Fifth Amendment* because it retroactively penalized certain domestic producers for free speech actions taken prior to enactment. (Id. ¶¶ 40 42.)

### C. Claims Exclusive to Koyo

Koyo brings claims distinguishable from those brought by the other Plaintiffs in this consolidated action. First, Koyo claims that the CDSOA is facially violative of the *First Amendment* guarantees of freedom of speech and belief and the ability of the citizenry to petition the government [*1373] for a redress of grievances, and also is facially overbroad because it compels speech. [10] (Compl. 2 ¶¶ 57 60, Compl. 5 ¶¶ 63 66, Compl. 6 ¶¶ 62 65.) Second, Koyo claims that the CDSOA is facially violative of the equal protection guarantees of the Constitution [**14] because it creates a classification implicating Koyo's fundamental speech rights, and because it impermissibly discriminates between similarly situated domestic producers. (Compl. 2 ¶¶ 65 68, Compl. 5 ¶¶ 71 74, Compl. 6 ¶¶ 70 73.) [11]

[10] Although SKF USA II did not precisely consider whether the CDSOA was facially overbroad because it compels speech, the reasoning by which the Court of Appeals rejected SKF's *First Amendment* claim applies with equal force to dispose of this claim.

[11] In its Complaints, Koyo also asserts that because the CDSOA is unconstitutional, it is void *ab initio*, and that the violating provisions are severable from the CDSOA as a whole. Although it styles these assertions as "Count 6" and "Count 7", they are rather relief sought and the Court so construes them.

Koyo has also filed a motion for leave to amend its

Case: 12-1250 Case: 12-1250 CASE PARTICIPANTS ONLY Document: 69 Document: 45 Page: 68 Filed: 07/25/2014 Filed: 07/21/2014

Page 8

823 F. Supp. 2d 1365, *1373; 34 Int'l Trade Rep. (BNA) 1270;
2012 Ct. Intl. Trade LEXIS 28, **14; SLIP OP. 2012-27

complaint to assert a claim that Defendant Intervenors have been unjustly enriched by virtue of receiving CDSOA distributions belonging, in part, to Koyo. (Mot. for Leave to Amend Compl. and Mem. in Support, April 11, 2008, ECF No. 146.)

### D. Claims Exclusive to SKF

SKF brings one unique claim in this consolidated action. In the wake of *SKF USA Inc. v. United States, 31 CIT 1163, 502 F. Supp. 2d 1325 (2007)*, [**15] the ITC informed SKF that "a decision by this Court as to SKF USA's status as an 'affected domestic producer' for one fiscal year's disbursements will not be applied to any year but that one fiscal year." (Compl. 4 ¶¶ 69 70.) SKF challenges this agency determination, ostensibly, though not explicitly, via the Administrative Procedure Act. SKF claims that in taking this position, the ITC has injured SKF by forcing it to "file an action each year in order to obtain the relief granted by the Court resulting from the Court's decision that the CDSOA, as applied to SKF[,] is unconstitutional." (Id. ¶ 71.) SKF claims that "[o]nce determined to be unconstitutional[] as to SKF USA in one case, the CDSOA is equally unconstitutional in all cases affecting SKF USA" and that the ITC's "refusal thus violates the Constitutional rights granted to SKF USA through the *First Amendment*, the equal protection guarantees of the U.S. Constitution and the due process guarantees of the U.S. Constitution." (Id. ¶¶ 71 72.)

### II. Statute of Limitations

Timken argues that three sets of claims in this consolidated action are barred by the two year statute of limitations in *28 U.S.C. § 2636(i)* and should be dismissed [**16] on jurisdictional grounds. First, Timken argues that the action SKF commenced on September 29, 2006 (Compl. 3; prior to consolidation, Court No. 06 00328) to obtain a CDSOA distribution for Fiscal Year 2004 ("SKF's 2004 Challenge") is untimely. (Timken Mot. 25 29.) Second, Timken argues that the action Koyo commenced on September 30, 2008 (Compl. 5; prior to consolidation, Court No. 08 00340), is untimely to the extent Koyo seeks to obtain a CDSOA distribution for Fiscal Year 2006 ("Koyo's 2006 Challenge"). (Id. at 29 30.) Last, Timken argues that all of Koyo's claims asserting facial challenges to the constitutionality of the CDSOA are barred by the two year statute of limitations. (Id. [*1374] at 30.) The Court determines that only two sets of claims SKF's 2004 Challenge and Koyo's 2006 Challenge are barred by the

two year statute of limitations.

In SKF USA II, the Court of Appeals applied the principle that [HN3] a cause of action accrues when all events necessary to fix the alleged liability of the defendant have occurred. *SKF USA II, 556 F.3d at 1348-49 & 1348 n.15* (citations omitted). The Court of Appeals concluded in SKF USA II that "the earliest SKF's claim could have accrued was when Customs [**17] published its notice of intent to distribute duties under the Byrd Amendment for fiscal year 2005 and invited potentially eligible producers to file certifications requesting a share of the distributions." *Id. at 1349*.

In the present case, the claims challenging the constitutionality of the CDSOA brought in SKF's 2004 Challenge and Koyo's 2006 Challenge are time barred because they were not brought within two years of the dates on which those claims accrued. See *28 U.S.C. § 2636(i)*. The 2004 notice of intent to distribute was published on June 2, 2004. *Distribution of Continued Dumping and Subsidy Offsets to Affected Domestic Producers, 69 Fed. Reg. 31,162 (June 2, 2004)*. SKF did not file its lawsuit challenging this distribution until more than two years later, on September 29, 2006. (Compl. 3.) The 2006 notice of intent to distribute was published on June 1, 2006. *Distribution of Continued Dumping and Subsidy Offset to Affected Domestic Producers, 71 Fed. Reg. 31,336 (June 1, 2006)*. Koyo did not file its lawsuit challenging this distribution until more than two years later, on September 30, 2008. (Compl. 5.) The petition support requirement was applied to each plaintiff by the respective [**18] ITC decision to exclude it from the list of potential ADPs, not by any subsequent action by [HN4] CBP, which does not have discretion to add potential ADPs to the Commission's list based on CBP's own determination of petition support. See *19 U.S.C. § 1675c(d)(2)* (providing that the notice of intention to distribute is to include "the list of affected domestic producers potentially eligible for the distribution based on the list obtained from the Commission . . . ."). The publication of the notices of intent to distribute placed each plaintiff on notice that Customs would make a distribution for the relevant fiscal year and that the plaintiff would not be participating in that distribution. Each plaintiff could have challenged the ITC decision to exclude it from the list of potential ADPs for the relevant fiscal year as soon as that list was made public in CBP's notice. We conclude, therefore, that SKF's 2004 Challenge and Koyo's 2006 Challenge first accrued on

Case: 12-1250 Case: 12-1250 CASE PARTICIPANTS ONLY Document: 46 Page: 46 Filed: 07/21/2014

Page 9

823 F. Supp. 2d 1365, *1374; 34 Int'l Trade Rep. (BNA) 1270;
2012 Ct. Intl. Trade LEXIS 28, **18; SLIP OP. 2012-27

the respective dates of publication of the two notices.

Further, we conclude that [HN5] the statute of limitations in *28 U.S.C. § 2636(i)* is jurisdictional. See *SKF USA II, 556 F. 3d at 1348* (assuming without deciding that the statute is [**19] jurisdictional under the test set forth in *John R. Sand & Gravel Co. v. United States, 552 U.S. 130, 128 S. Ct. 750, 169 L. Ed. 2d 591 (2008))*. Accordingly, the claims comprising SKF's 2004 Challenge and Koyo's 2006 Challenge are not properly before us, and we dismiss these claims for lack of jurisdiction according to *USCIT Rule 12(b)(1)*.

Finally, we reject Defendant Intervenors' argument that Koyo's remaining facial challenges are barred by the two year statute of limitations because these challenges were not brought within two years of enactment. In dicta in SKF USA II, the Court of Appeals opined that "SKF could have filed a facial challenge to the Byrd Amendment immediately after its enactment," [*1375] *556 F.3d at 1348*, but the Court of Appeals did not state that causes of action challenging the Byrd Amendment could not accrue after the date of enactment. The Court of Appeals reached a holding as to the earliest date on which a particular cause of action at issue in that case could have accrued, i.e., the date of publication of the notice of intent to distribute. [12] [HN6] The date on which a cause of action of a domestic party bringing a constitutional challenge to the Byrd Amendment accrues must be determined according to the [**20] specific facts giving rise to that claim. On the particular facts pertinent here, Koyo's facial claims accrued on the date of public notice of a final ITC determination that Koyo had been determined to be ineligible for a distribution related to the particular fiscal year in question.

12 Our earlier opinion in *Pat Huval Restaurant & Oyster Bar, Inc. v. United States, 32 CIT 232, 547 F. Supp. 2d 1352, 1360 (2008)*, reached a different conclusion than did the Court of Appeals in SKF USA II as to the earliest date on which a cause of action challenging the Byrd Amendment could accrue. The Court of Appeals reasoned that [HN7] a claim may accrue for a particular fiscal year once it is known that "Byrd Amendment distributions would be available" for that year, *id. at 1348-49*, rather than once a plaintiff suffered the annual "injury caused by the payments made to their direct domestic competitors," as we reasoned in *Pat Huval, 32 CIT at 239, 547 F.*

*Supp. 2d at 1361*. Having entered no judgment on the claims that we did not dismiss following our earlier opinion, we consider the statute of limitations questions anew based on the relevant guidance in SKF USA II. We reject SKF's argument that our having [**21] previously decided that the claims remaining in this action were not time barred and Defendant Intervenors' failing to move for reconsideration of that decision within 30 days make it inappropriate for us to reconsider whether the claims pertaining to fiscal year 2004 were timely filed. SKF's Resp. 28 29. SKF is correct that reconsideration under *Rule 59(a)* is not available in this case because motions pursuant to *Rule 59(a)* must be "filed not later than 30 days after the entry of the judgment or order," *USCIT Rule 59(b)*, which was not the case here, SKF's Resp. 28 29. But [HN8] the inapplicability of *Rule 59(a)* does not exhaust the court's power to reconsider its non final decisions. Instead, the Court may reconsider its prior decision pursuant to its general authority, which is recognized by *USCIT Rule 54*, to reconsider a non final order prior to entering final judgment.

## III. Plaintiffs' Facial and As Applied Challenges Under the *First Amendment* and the *Equal Protection Clause* Are Foreclosed by Binding Precedent

### A. Koyo's Facial Challenges

The survival of Koyo's facial claims, however, is short lived. Koyo's claims facially challenging the constitutionality of the CDSOA's petition support [**22] requirement under the *First Amendment* (See, e.g., Compl. 2 ¶¶ 57 60) and the equal protection doctrine of the *Fifth Amendment* (Id. ¶¶ 65 68) are precluded by the holding in SKF USA II. [HN9] In SKF USA II, the Court of Appeals held that the CDSOA did not violate constitutional *First Amendment* or equal protection principles as applied to SKF in that case. *556 F.3d at 1360*. That ruling forecloses any possibility that the statute is facially unconstitutional on the *First Amendment* and equal protection grounds asserted by SKF in SKF USA II. Koyo's claims to the same effect therefore must be dismissed pursuant to *USCIT Rule 12(b)(5)* for failure to state a claim upon which relief can be granted.

### B. SKF's As-Applied Challenges

Timken argues that SKF's as applied *First Amendment* and equal protection challenges to the CDSOA are barred either by res judicata (claim preclusion) or collateral estoppel (issue preclusion). (Timken Mot. 4 16.) [HN10] "Under res judicata, [*1376] a final judgment on the merits bars further claims by parties or their privies based on the same cause of action." *Brown v. Felsen*, 442 U.S. 127, 131, 99 S. Ct. 2205, 60 L. Ed. 2d 767 (1979) (internal quotation omitted). "Under the doctrine of collateral estoppel, or issue preclusion, [**23] a litigant who has litigated an issue in a full and fair proceeding is estopped from relitigating the same issue in a subsequent proceeding." *Sahaviriya Steel Indus. Pub. Co. v. United States*, 34 CIT , , 714 F. Supp. 2d 1263, 1273 (2010) (citing *Thomas v. Gen. Servs. Admin.*, 794 F.2d 661, 664 (Fed. Cir. 1986)). The principle of issue preclusion is applicable here.

SKF litigated its *First Amendment* as applied and equal protection challenges before the Court of Appeals in SKF USA II and received a final judgment on the merits of those claims in that case. (SKF did not litigate and receive a final judgment on the merits of its due process retroactivity claim, which we address elsewhere in this opinion.) The Court holds that SKF is barred from relitigating the *First Amendment* as applied and equal protection issues in the present case, notwithstanding that SKF is pursuing a different cause of action in seeking CDSOA distributions for a different fiscal year than that involved in SKF USA II.

SKF argues in response that its as applied *First Amendment* and equal protection claims should not be barred by collateral estoppel. (Pl. SKF USA Inc.'s Opp. to Def.'s and Def. Ints.' Mots. To Dismiss [**24] and for J. on the Pleadings 20 21 ("SKF's Opp."), June 24, 2011, ECF No. 223.) SKF argues that collateral estoppel should not apply in light of the Supreme Court's decision in *Sorrell v. IMS Health Inc.*, 131 S. Ct. 2653, 180 L. Ed. 2d 544 (2011), which it believes satisfies an "exception to the preclusion doctrines for new claims brought after 'momentus changes in important, fundamental constitutional rights.'" (SKF's Opp. 20 21) (quoting *Roche Palo Alto LLC v. Apotex, Inc.*, 531 F.3d 1372, 1380-81 (Fed. Cir. 2008) (internal quotation omitted)). Sorrell is not an appropriate basis for invoking the exception to issue preclusion, as the Supreme Court's holding in the case does not undermine the validity of SKF USA II or the Central Hudson test on which the

Court of Appeals relied in analyzing the petition support requirement. As we determined recently in ruling on another as applied *First Amendment* challenge to the CDSOA, Sorrell did not implicitly overturn SKF USA II or change the requisite level of scrutiny appropriate for the CDSOA. See *Furniture Brands*, 35 CIT at , 807 F. Supp. 2d at 1313-15. Sorrell and SKF analyze dissimilar statutes, which vary considerably in how they affect expression as well as [**25] in purpose. Id. As the Court of Appeals concluded in SKF USA II, the CDSOA does not have as a stated purpose, or even an implied purpose, the intentional suppression of expression, *SKF USA II, 556 F.3d at 1351-52*, whereas the Vermont statute the Supreme Court struck down in Sorrell was intended to suppress expression, specifically the use in marketing of identifying information related to prescription drugs, see *Sorrell, 131 S. Ct. at 2660*. Because Sorrell does not require us to review the CDSOA according to a *First Amendment* analysis differing from that applied by the Court of Appeals in SKF USA II, it does not represent a "momentus change[] in important, fundamental constitutional rights" warranting an exception to the issue preclusion doctrine. See *Roche Palo Alto LLC, 531 F.3d at 1380-81*.

## C. Koyo's & the Pat Huval Plaintiffs' As-Applied Challenges

Koyo and the Pat Huval Plaintiffs fail to plead facts allowing the Court to conclude [*1377] that their as applied *First Amendment* and equal protection challenges to the CDSOA are distinguishable from claims brought, and rejected, in SKF USA II. The Complaints contain no assertions that the CDSOA was applied to the Pat Huval Plaintiffs or Koyo in a [**26] different manner than the statute was applied to other parties who did not support a petition. Neither Koyo nor the Pat Huval Plaintiffs have claimed that they supported any of the antidumping duty petitions at issue in this consolidated case. See generally, supra, at 4 5. The facts as pled place Koyo and the Pat Huval Plaintiffs on the same footing as other potential claimants who did not support the petition, such as SKF in SKF USA II. See *556 F.3d at 1343* ("Since it was a domestic producer, SKF also responded to the ITC's questionnaire, but stated that it opposed the antidumping petition.").

Koyo unsuccessfully attempts to distinguish its as applied *First Amendment* and equal protection claims from those resolved in SKF USA II. (Pl. Koyo Corp. of

U.S.A.'s Opp. to Defs.' and Def. Intervenors' Mots. to Dismiss and Def. for J. on the Pleadings ("Koyo Opp.") 10 11, June 24, 2011, ECF No. 224.) While Koyo seeks distributions for different fiscal years and from different antidumping duty orders than SKF sought in SKF USA II, these factual distinctions have no bearing on the applicability of the holding of that case. Neither SKF nor Koyo expressed support for a petition, and thus neither qualified [**27] to become an ADP. Consequently, Koyo's and the Pat Huval Plaintiffs' as applied *First Amendment* and equal protection challenges are also foreclosed by the holding in SKF USA II and must be dismissed pursuant to *USCIT Rule 12(b)(5)* for failure to state a claim upon which relief can be granted.

## III. The Petition Support Requirement Does Not Violate Due Process

### A. Retroactivity

All Plaintiffs claim that the CDSOA is impermissibly retroactive, in violation of the due process guarantee of the *Fifth Amendment*, because it bases their eligibility for disbursements on past conduct, i.e., support for a petition. In *N.H. Ball Bearing, Inc. v. United States, 36 CIT     ,     , 2012 Ct. Intl. Trade LEXIS 2, *21-22, Slip Op. 2012-2, at 8, 14 (Jan. 3, 2012)*, we considered a claim essentially identical to Plaintiffs' retroactivity claims. We determined then that [HN11] "the retroactive reach of the petition support requirement in the CDSOA is justified by a rational legislative purpose and therefore is not vulnerable to attack on constitutional due process grounds." *2012 Ct. Intl. Trade LEXIS 2, *21-22, at 14*. We reasoned that "[i]t was not arbitrary or irrational for Congress to conclude that the legislative purpose of rewarding domestic producers who supported antidumping petitions [**28] . . . would be 'more fully effectuated' if the petition support requirement were applied both prospectively and retroactively." *2012 Ct. Intl. Trade LEXIS 2, *20, at 13* (quoting *Pension Benefit Guaranty Corp. v. R.A. Gray & Co., 467 U.S. 717, 730-31, 104 S. Ct. 2709, 81 L. Ed. 2d 601 (1984)*). We conclude, therefore, that Congress did not violate Plaintiffs' *Fifth Amendment* due process rights in basing potential eligibility for CDSOA disbursements on a decision on whether to support the petition that Plaintiffs made prior to the enactment of the CDSOA. Accordingly, we will dismiss these claims in Plaintiffs' Complaints for failure to state a claim upon which relief can be granted.

### B. Procedural Due Process

The Pat Huval Plaintiffs claim that they were deprived of a vested property [*1378] interest without notice or hearing in violation of the due process guarantee. (Compl. 1 ¶¶ 27 28.) Having failed to satisfy the petition support requirement of the CDSOA, however, the Pat Huval Plaintiffs never obtained a right to receive distributions under the statute. Therefore, they lack the property interest on which they have based their procedural due process claim. [HN12] "The first inquiry in every due process challenge is whether the plaintiff has been deprived of a protected [**29] interest in 'property' or 'liberty.'" *American Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 59, 119 S. Ct. 977, 143 L. Ed. 2d 130 (1999)* (citations omitted). In the absence of such a property interest, there can have been no violation of procedural due process. This claim has no merit because the Pat Huval Plaintiffs, having failed to support the relevant antidumping duty petition, have no cognizable property interest in CDSOA distributions. (See Compl. 1 ¶¶ 22.) Accordingly, the Pat Huval Plaintiff's procedural due process claim is dismissed for failure to state a claim upon which relief can be granted.

### C. Bill of Attainder

The Pat Huval Plaintiffs alone assert a claim that the CDSOA constitutes a Bill of Attainder in violation of their *Fifth Amendment* rights, arguing that the statute retroactively penalizes certain domestic producers for past actions. (Compl. 1 ¶¶ 40 42.) The Supreme Court has stated that

> [HN13] [a] bill of attainder is a legislative act which inflicts **punishment** without a judicial trial. . . . [L]egislative acts, no matter what their form, that apply either to named individuals or to easily ascertainable members of a group in such a way as to inflict punishment on them without a judicial trial are bills of [**30] attainder prohibited by the Constitution.

*United States v. Lovett, 328 U. S. 303, 315 316, 66 S. Ct. 1073, 90 L. Ed. 1252, 106 Ct. Cl. 856 (1946)* (internal quotation marks omitted) (emphasis added). On its face, the CDSOA does not contain any provision that "inflicts punishment" on those who did not support a petition. Moreover, as the Court of Appeals concluded in SKF USA II, the purpose of the CDSOA is not to punish a particular class of persons; instead, the Court of Appeals

concluded that a purpose of the CDSOA was to reward with monetary benefits those entities who supported government enforcement of the antidumping law by bringing or supporting an antidumping petition. *SKF USA II, 556 F.3d at 1351-52.* The Court of Appeals concluded that this goal is rationally related to a substantial government interest, namely, enforcement of the trade laws, and reasoned that it is not unfair to deny benefits to non supporters of antidumping petitions. *Id. at 1359-60.* Because [HN14] the CDSOA is not a bill of attainder, the Pat Huval Plaintiffs' claim to that effect adds nothing beyond their claim that the CDSOA is impermissibly retroactive in violation of the due process guarantee of the *Fifth Amendment*, a claim we rejected supra. Therefore, we [**31] will dismiss the Bill of Attainder claim as one on which no relief can be granted.

## IV. SKF's and the Pat Huval Plaintiffs' APA Claims Are Without Merit

### A. The Pat Huval Plaintiffs' APA Claim

The Pat Huval Plaintiffs claim that the actions of the ITC, which refused to include the Pat Huval Plaintiffs on the list of affected domestic producers, and of CBP, which refused to pay CDSOA distributions [*1379] to the Pat Huval Plaintiffs, must be set aside as unlawful under the APA. (Compl. 1 ¶¶ 31 34.) The Pat Huval Plaintiffs claim that Defendants arbitrarily and capriciously "adjudicate[d] a right bestowed by Congress in the year 2000 based on a proceeding that took place in the year 1996," and also that Defendants made unspecified decisions "regarding Byrd Amendment eligibility" that were "based on wholly arbitrary and capricious standards." (Id. ¶ 33.)

When the ITC based its determination about the Pat Huval Plaintiffs' eligibility to become ADPs on the Pat Huval Plaintiffs' failure to express support for the relevant antidumping petition in 1996, it did not act arbitrarily or capriciously. To the contrary, [HN15] in the case of orders in place at the time the CDSOA was enacted, the CDSOA required the ITC [**32] to base its eligibility determination retroactively on the basis of petition support. *19 U.S.C. § 1675c(b)(1)(A)* (an ADP must have been "a petitioner or **interested party in support of the petition** with respect to which an antidumping duty order . . . has been entered."), *(d)(1)* ("The Commission shall forward to [CBP] . . . in the case of orders or findings in effect on January 1, 1999 or thereafter . . . a list of persons **that indicate support of**

**the petition** by letter or through questionnaire response."). Additionally, the Pat Huval Plaintiffs' Complaint alleges no facts from which we could conclude that the ITC and CBP made decisions regarding eligibility for CDSOA distributions in an arbitrary or capricious manner. As to this claim, [HN16] the Complaint does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009)* (quoting *Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)).* In [**33] the absence of any factual allegation from which we otherwise could conclude that either agency's actions were violative of the APA, we conclude that the Pat Huval Plaintiffs' APA claim must be dismissed.

### B. SKF's APA Claim

The Court construes the claim brought by SKF challenging the ITC's "position that a decision by this Court as to SKF USA's status as an 'affected domestic producer' for one fiscal year's disbursements will not be applied to any year but that one fiscal year," as a challenge to agency action under the Administrative Procedure Act. (Compl. 4 ¶ 70; see [HN17] *5 U.S.C. §§ 702, 704* (authorizing persons aggrieved by certain types of final agency action to seek judicial review thereof).) [HN18] The Constitution permits a federal court to exercise jurisdiction only over a live case or controversy. U.S. Const. art. III, § 2. In order to satisfy the case or controversy requirement, "a litigant must have suffered some actual injury that can be redressed by a favorable judicial decision." *Iron Arrow Honor Society v. Heckler, 464 U.S. 67, 70, 104 S. Ct. 373, 78 L. Ed. 2d 58 (1983).* If "the issue[] presented [is] no longer 'live' or the parties lack a legally cognizable interest in the outcome," the case is moot. *PPG Industries, Inc. v. United States, 11 CIT 303, 306, 660 F. Supp. 965, 968 (1987)* [**34] (quoting *Powell v. McCormack, 395 U.S. 486, 496, 89 S. Ct. 1944, 23 L. Ed. 2d 491 (1969)).* SKF brought this claim subsequent to having obtained a successful judgment in SKF USA I, but prior to the reversal of that decision in SKF USA II. Because SKF no longer has a decision from this, or any, court that it is entitled to status as an affected domestic producer, it cannot claim injury by virtue of the ITC's "position," [*1380] and therefore this claim is now moot. Consequently, SKF's APA claim must be dismissed on mootness grounds pursuant to *USCIT Rule 12(b)(1).*

823 F. Supp. 2d 1365, *1380; 34 Int'l Trade Rep. (BNA) 1270;
2012 Ct. Intl. Trade LEXIS 28, **34; SLIP OP. 2012-27

## V. SKF and Koyo's Joint Motion for Preliminary Injunction

Plaintiffs SKF and Koyo move for a "preliminary injunction" under which Defendants would be enjoined from disbursing CDSOA funds for fiscal years 2006 through 2010 from the antidumping duty orders covering ball bearings and tapered roller bearings during the pendency of this litigation, including all appeals, petitions for further judicial review, and remands. (Pls.' Joint Mot. for a Prelim. Inj. (Jan. 6, 2012), ECF No. 235.) [HN19] A preliminary injunction normally dissolves upon the entry of judgment. See *Univ. of Texas v. Camenisch, 451 U.S. 390, 395, 101 S. Ct. 1830, 68 L. Ed. 2d 175 (1981)* (stating that the purpose of a preliminary injunction is [**35] to preserve the status quo until the merits of the action are ultimately determined); 11A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure, § 2947 (2d ed. 2010) (a principal purpose of preliminary injunctive relief is "to preserve the court's power to render a meaningful decision after a trial on the merits."). Because we are bringing the entire case to a conclusion at this time, the question of a preliminary injunction to prevent irreparable harm during the pendency of the case before us is now moot.

The injunction sought would extend past the entry of judgment in this case; consequently, it is, in this respect, akin to "permanent" equitable relief. Our conclusion as to the disposition of the injunction motion, however, is no different. We have concluded for the reasons discussed above that no remedy, either at law or in equity, is available on the claims properly before us, i.e., those not dismissed under *USCIT Rule 12(b)(1)* for lack of jurisdiction. Moreover, the injunction sought would prejudice Defendant Intervenors, who would experience further delay in obtaining withheld distributions, and it would not serve the public interest, which is furthered by a lawful [**36] and orderly administration of the CDSOA. Even when we presume, for the purpose of deciding the motion, that SKF and Koyo would be irreparably harmed by the pending distribution of withheld funds, we still conclude that SKF and Koyo do not qualify for a permanent injunction. See *Ebay Inc. v. Mercexchange, L.L.C., 547 U.S. 388, 391, 126 S. Ct. 1837, 164 L. Ed. 2d 641 (2006)* ([HN20] requiring for a permanent injunction that a plaintiff have suffered an irreparable injury, that the remedies available at law be inadequate to compensate for that injury, that considering the balance of hardships between the parties, a remedy in

equity be warranted, and that the public interest would not be disserved by a permanent injunction). Therefore, we will deny SKF's and Koyo's motion for an injunction.

## VI. Koyo's Motion for Leave to Amend Its Complaint Is Denied for Futility

Koyo has moved to amend the complaint to add a claim against Defendant Intervenors for unjust enrichment. (Proposed Am. Compl. ¶ 81, ECF No. 145.) We must deny this motion. Amending the complaint would be futile because the proposed new claim would be outside [HN21] the Court's subject matter jurisdiction under *28 U.S.C. § 1581(i)*, which is limited to civil actions against "the [**37] United States, its agencies, or its officers." The proposed claim, which is a direct claim by Koyo [*1381] against Defendant Intervenors, does not fall within the Court's limited jurisdiction over counterclaims, cross claims, or third party actions. See *28 U.S.C. § 1583*. Nor may we exercise jurisdiction over this proposed claim by invoking supplemental jurisdiction as granted by Congress to the district courts, *28 U.S.C. § 1367*, or common law pendant or ancillary jurisdiction. See *Sioux Honey Assoc. v. Hartford Fire Insurance Co., No. 2011-1040, 672 F.3d 1041, 2012 U.S. App. LEXIS 2399, 2012 WL 379626, at *6 *9 (Fed. Cir. Feb. 7, 2012)*.

### CONCLUSION

For the foregoing reasons, Koyo's motion for leave to amend its Complaint will be denied; Koyo and SKF's joint motion for injunctive relief will be denied; Koyo's claims with respect to the fiscal year 2006 CDSOA distribution and SKF's claims with respect to the fiscal year 2004 CDSOA distribution are barred by the statute of limitations in *28 U.S.C. § 2636(i)* and will be dismissed pursuant to *USCIT Rule 12(b)(1)*; SKF's APA claim will be dismissed as moot pursuant to *USCIT Rule 12(b)(1)*; and all other claims will be dismissed for failure to state a claim upon which relief may be granted pursuant [**38] to *USCIT Rule 12(b)(5)*. We conclude, further, that no valid purpose would be served by allowing any plaintiff a further opportunity to seek leave to amend a complaint and, accordingly, that there is no reason to prolong this action. Consequently, this action will be dismissed. Judgment will be entered accordingly.

/s/ Gregory W. Carman

Gregory W. Carman, Judge

Page 14

823 F. Supp. 2d 1365, *1381; 34 Int'l Trade Rep. (BNA) 1270;
2012 Ct. Intl. Trade LEXIS 28, **38; SLIP OP. 2012-27

Dated: March 1, 2012                                      New York, New York

**PROOF OF SERVICE**

I hereby certify that on July 21, 2014, I electronically filed the foregoing

document with the Clerk of the Court using the CM/ECF system, which will send

notification of the filing to all registered users of the CM/ECF system.

/s/   Herbert C. Shelley
Herbert C. Shelley
Steptoe & Johnson LLP

*Counsel for SKF USA Inc.*

## CERTIFICATE OF COMPLIANCE

1.    This brief complies with the type-volume limitation of Federal Rules of Appellate Procedure 28.1(e)(2) and 32(a)(7)(B).

This brief contains 6,016 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii).

2.    This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the typestyle requirements of Federal Rule of Appellate Procedure 32(a)(6).

This brief has been prepared in a proportionally spaced type face using Word 2010 in Times New Roman 14 point font.

/s/   Herbert C. Shelley
Herbert C. Shelley
Steptoe & Johnson LLP

*Counsel for SKF USA Inc.*